WINTERSCHEID, RESPONDENT, *v.* REICHLE, APPELLANT.

(No. 3,089.)

(Submitted March 14, 1912.   Decided March 20, 1912.)

[122 Pac. 740.]

*Landlord and Tenant—Trespass—Excessive Verdict—Evidence*
*—Admissibility—Briefs—Appeal and Error.*

Landlord and Tenant—Premises—Trespass—Actions—Evidence.
  1.  In an action by a tenant against his landlord for trespass upon the demised premises, evidence *held* sufficient to go to the jury on the issue of trespass.

Trespass—Financial Condition of Defendant—Evidence.
  2.  In an action where punitive damages are claimed, evidence of the financial condition of defendant is admissible.

Appeal and Error—Briefs—Arguments.
  3.  Questions not argued in an appellant's brief will not be reviewed.

Landlord and Tenant—Premises—Trespass—Damages—Excessiveness.
  4.  In an action for punitive and compensatory damages sustained by reason of trespass upon property of which plaintiff was a tenant in moving the house while plaintiff was still an occupant, an award of $700 damages was excessive by $450, where it appeared that plaintiff refused to move from the premises in accordance with the direction of defendant, and that aside from the injury to her feelings the only actual damage sustained did not amount to more than $200.

*Appeal from District Court, Silver Bow County; John B. Mc-*
*Clernan, Judge.*

ACTION by May Winterscheid against August E. Reichle. From a judgment for plaintiff and an order denying him a new trial, defendant appeals.   Affirmed on condition.

In behalf of Appellant, there was a brief by *Mr. John J. Mc-*
*Hatton* and oral argument by *Mr. J. E. Murray.*

For Respondent, there was a brief by *Messrs. Chas. Mattison,*
*M. J. Cavanaugh,* and *J. A. Poore,* and oral argument by *Mr.*
*Poore.*

The following cases deny the landlord's right to forcibly repossess himself of the demised premises, even after the termination of the tenancy; if he does so he must respond in damages: *Phelps* v. *Randolph,* 147 Ill. 335, 35 N. E. 243; *Farwell* v. *War-*

*ren*, 51 Ill. 467; *Jasper* v. *Purnell*, 67 Ill. 358; *Doty* v. *Burdick*, 83 Ill. 473; *Thiel* v. *Bulls Ferry Land Co.*, 58 N. J. L. 212, 33 Atl. 281; *Entelman* v. *Hagood*, 95 Ga. 390, 22 S. E. 545; *Griffin* v. *Martel*, 77 Vt. 19, 58 Atl. 788. In every letting of property for human habitation there is an implied covenant for quiet and peaceable possession. (*Hoagland* v. *New York etc.*, 111 Ind. 443, 12 N. E. 83; *Herpolsheimer* v. *Funke*, 1 Neb. (Unof.) 471, 95 N. W. 688; *Kitchen Bros. Hotel Co.* v. *Philbin*, 2 Neb. (Unof.) 340, 96 N. W. 487.) And the appellant could not by any subterfuge as selling the house while plaintiff's tenancy remained undetermined avoid responsibility for an unlawful intrusion and interference with her possession of said premises. (*Stern* v. *Sawyer*, 78 Vt. 5, 112 Am. St. Rep. 890, 6 Ann. Cas. 356, 61 Atl. 36; *Smith* v. *Caldwell*, 78 Ark. 333, 95 S. W. 467; *Maney* v. *Lamphire*, 139 Mich. 429, 102 N. W. 974.) It was his duty to protect her possession instead of even consenting to allow anyone to interfere with it. Where the owner unlawfully invades the possession, he will be liable in damages to one peaceably in possession. (*Sinclair* v. *Stanley*, 64 Tex. 67; *Larue* v. *Russell*, 26 Ind. 386.) This doctrine was declared in the following cases very much in point on all questions raised in this case: *Walterscheid* v. *Crupper*, 79 Kan. 627, 100 Pac. 623, where the landlord's agent took part of the roof off to force eviction, and it rained on occupants; *Wilson* v. *Campbell*, 75 Kan. 159, 121 Am. St. Rep. 366, 12 Ann. Cas. 766, 8 L. R. A., n. s., 426, 88 Pac. 548; *Whitney* v. *Brown*, 75 Kan. 678, 12 Ann. Cas. 768, 11 L. R. A., n. s., 468, 90 Pac. 277; *Preiser* v. *Weilandt*, 48 App. Div. 569, 62 N. Y. Supp. 890, where a landlord entered and began to tear down a house in which a woman was sick and thereafter died by reason of the noise, dust and commotion; *Mason* v. *Hawes*, 52 Conn. 12, 52 Am. Rep. 522; *Spencer* v. *Commercial Co.*, 30 Wash. 520, 71 Pac. 53; *Huggins* v. *Bridges*, 29 Pa. Sup. Ct. 82, where a landlord stopped up a chimney and caused injury to inmates by smoke and gas.

In this character of action, anyone who advises, assists, or in any way abets a trespass is liable. (*De Palma* v. *Weinman*, 15

N. M. 68, 24 L. R. A., n. s., 423, 103 Pac. 782; *Chase* v. *Cochrane,* 102 Me. 431, 67 Atl. 320; *Engle* v. *Simmons,* 148 Ala. 92, 121 Am. St. Rep. 59, 12 Ann. Cas. 740, 41 South. 1023, 7 L. R. A., n. s., 96.)

Whenever a person's house is entered illegally, a cause of action accrues at once, and whatever is done thereafter is but an aggravation of damages.    (3 Sutherland on Damages, p. 364.) The wrongful entry is the gist of the action.    (*Id.,* p. 375; *Louisville Ry.* v. *Higgenbottom,* 153 Ala. 334, 44 South. 872.)    Exemplary damages may be allowed though no actual damage be shown in such cases.    (*McConathy* v. *Deck,* 34 Colo. 461, 7 Ann. Cas. 896, 4 L. R. A., n. s., 358, 83 Pac. 135; *Kline* v. *Kline,* 158 Ind. 602, 58 L. R. A. 397, 64 N. E. 9; *Parker* v. *Mise,* 27 Ala. 480, 62 Am. Dec. 776; *Favorite* v. *Cottrill,* 62 Mo. App. 119; *McCarthy* v. *Miller* (Tex. Civ. App.), 57 S. W. 973; *Freelove* v. *Gould,* 3 Kan. App. 750, 45 Pac. 455; *Zwerling* v. *Annenberg,* 38 Misc. Rep. 169, 77 N. Y. Supp. 275; *Brame* v. *Clark,* 148 N. C. 364, 16 Ann. Cas. 73, 19 L. R. A., n. s., 1033, 62 S. E. 418, and cases cited; *Koester* v. *Cowan,* 37 Ill. App. 252; *Campbell* v. *Coonradt,* 22 Kan. 704.)    No man, be he landlord or other, has the right to take the law in his own hands, and then complain of excessive damages.    (*Titus* v. *Corkins,* 21 Kan. 519 (722) ; *West Chicago St. R. Co.* v. *Morrison etc. Co.,* 160 Ill. 288, 43 N. E. 398; *Alcorn* v. *Mitchell,* 63 Ill. 553; *Cutler* v. *Smith,* 57 Ill. 252; *Draper* v. *Baker,* 61 Wis. 450, 50 Am. Rep. 143, 21 N. W. 528.)

MR. JUSTICE SMITH delivered the opinion of the court.

Plaintiff brought this action to recover compensatory and also punitive damages alleged to have been sustained by reason of a trespass upon property of which she was the tenant.    It appears that the defendant Reichle owned the property, and desired her to vacate the same, and thus enable him to remove the house occupied by her and erect another structure in its place.    On August 31, 1909, Reichle sold the house to one Firpo, stipulating in the bill of sale, "said house to be removed as soon as vacated by present tenants," referring to the plaintiff.    Defendant

Palmer was employed by Firpo to do the actual work of moving the house. Plaintiff's rent had been paid up to and including September 7, 1909, and either on that date, or a day or two later, and while she was still occupying the premises under a sort of tacit arrangement or understanding with Reichle that she might remain there until she found another house, but that she should do so as soon as possible, Palmer began to raise the house, and thereby caused some of her furniture and household utensils to be broken and damaged. It further appears that Reichle was quite anxious to get possession of the property so as to enable him to proceed with his plans, and on August 20, for the purpose, perhaps, of frightening her so that she would move promptly, he served her with notice that after September 7 her rent would be greatly increased. After the service of this notice, Reichle and his agent, Came, continually importuned her to vacate the house, sometimes requesting and again demanding that she do so, and frequently intimated to her that, if she did not vacate, they would "force her out," and "have her on jack-screws and out on the street." She testified: "They would be abusive to me. They would be insulting." And, although there is not any testimony to justify the conclusion that she was actually abused or insulted, the jurors might well have believed, if they credited her testimony, that every possible means was employed to frighten her into giving up possession. She also testified that they "bothered her so she would frequently break down and cry," protesting that she was "doing her best to find another house," but was encountering considerable difficulty in that regard by reason of the fact that she had no money. The foregoing narrative is, of course, founded on the testimony of the respondent herself, and is, we think a fair statement of the grievance of which she complains, omitting a detailed account of the alleged damages sustained. In addition to the evidence of which a summary has been given, W. H. Goodland, a deputy county assessor of Silver Bow county, produced from his office a so-called "Present Ownership Book," and testified therefrom that in the year 1911 (the trial was had on the eleventh day of

45 Mont.—16

April, 1911) Reichle was assessed for taxation purposes on property valued at $25,000, and a firm of which he was a member was assessed on $30,000 worth of property. This testimony was objected to as incompetent, and for the further reason "that present ownership books are not the best evidence of the property possessed by any person." The court charged the jury that they were at liberty to assess punitive damages against both Reichle and Palmer, and in so doing might take into consideration "the financial condition of the defendants." There was no evidence of Palmer's pecuniary circumstances. The instruction just referred to was objected to by counsel for Reichle, on the sole ground that there was not any evidence to justify a finding that he was guilty of oppression or malice, or that his actions caused plaintiff to suffer any "grief, shame, or fear." The jury, in order to extricate themselves from the · dilemma thus presented, returned two verdicts, one against Palmer for $200 damages, and another against Reichle for $700 damages. Judgment was entered upon the verdict against Reichle, and he appeals therefrom, and also from an order denying a new trial. In his notice of intention to move for a new trial he specifies "excessive damages" as one of the grounds to be relied on. We discover in the record prepared by appellant a specification of error that "the judgment is contrary to law," but the contention is not again referred to.

1. It is contended (a) that there is not any evidence to support the conclusion that Reichle committed any of the acts charged in the complaint; and (b) that there is no evidence to justify a verdict for damages by way of punishment. We think [1] the plaintiff established a *prima facie* case of trespass against the appellant. If the jury had believed his testimony, and that of his witnesses, they must have returned a different verdict, but they chose to find for the plaintiff. As to the second contention, we are frank to say that there is very little evidence of such oppression or malice as will warrant a verdict for exemplary damages under the provisions of section 6047 of the Revised Codes. But there was some evidence. Plaintiff testi-

fied: "Mr. Reichle said he didn't intend to stand any fooling; that he was going to sell the place, and wanted the house moved. He would come to the door and say: 'Well, you better be moving.' Mr. Came would say: 'Mr. Reichle has sent me down to say he wants the place. He has got to have it'—and Mr. Reichle would come the next day and repeat the same thing, that I would have to get out, that he didn't want to be bothered about it, that he wanted to have the surveyors there so that he could get started at once. Mr. Reichle told me that Came was his agent. Mr. Came would say to me: 'We want you to move. We want to know if you are going to get out, and, if you don't get out, we will force you. We will have you up on the jack-screws, and have you out on the street.' They pulled up the walks, and put the jack-screws under the corner of the house, and they had to fix planks for me to come and go out of the kitchen. I went out and asked if they could do that. They said, 'Yes,' they could. I said: 'All my furniture is in there.' They said that didn't make any difference, that they were ordered to come and go ahead, and I would be moved in a little while. I said to Mr. Palmer, 'Aren't you going to give me a chance to get out?' and he said, 'I was up to see them, and they told me to go right ahead with the work.' Mr. Reichle came down there on the morning the house was on jack-screws, and Mr. Came also. Mr. Reichle was around there quite a little time that morning, part of the time on my lot. On the day the house was raised he offered me $5 to pay my rent some place else. He abused me that morning. I considered that—I didn't think any gentleman would speak that way to a woman." If the jury believed from this testimony that Mr. Reichle was cognizant of the fact that Palmer was about to move the house and consented thereto, and that their actions, as detailed by the plaintiff, evidence some degree of oppression, we cannot say as a matter of law that this conclusion was erroneous. The complaint contains three counts: (1) for "wanton, malicious, oppressive and unjustifiable acts of the defendants," for which damages in the the sum of $2,000 are claimed; (2) for damage to furniture in the sum of $100; (3) for loss on furni-

ture disposed of at forced sale for $100 less than its real value. The two verdicts for $200 and $700, respectively, when read in connection with the complaint, clearly disclose the fact that the jury assessed punitive damages in the sum of $500 against the appellant.

2. Did the court err in receiving evidence of the pecuniary circumstances of the appellant? Messrs. Grattan & Jennings in their article on Damages, 13 Cyc. 211, lay down the rule thus: "Evidence of the pecuniary condition and financial [2] circumstances of defendant is usually held to be relevant and admissible as bearing upon the amount of punitive or exemplary damages which may be awarded, * * * but where there are several defendants sued jointly in trespass, inasmuch as the same amount of damages must be assessed against all, it is error to instruct the jury that they may take into consideration the pecuniary ability of each individual defendant to pay punitive or exemplary damages." The rule thus laid down seems to be borne out by the following decisions: *Toledo etc. Ry. Co.* v. *Smith,* 57 Ill. 517; *Chicago City Ry. Co.* v. *Henry,* 62 Ill. 142; *Smith* v. *Wunderlich,* 70 Ill. 426. The rule disposes of the contention that evidence of financial worth is incompetent in actions of this nature; and the exception noted cannot avail the defendant, for the reason that he did not raise the point therein indicated in the court below, and has not attempted to do so here.

3. The contention that the contents of the so-called "present [3] ownership book" were incompetent and not the best evidence is not argued in the briefs, and in the circumstances we do not feel called upon to make an investigation of the question.

4. Incidentally it is claimed that the verdict is excessive. We agree.

The cause is remanded to the district court, with directions to grant a new trial unless within thirty days after *remittitur* filed the respondent shall consent in writing that the judgment for damages be reduced to $250. If such consent is given, the judgment shall be modified accordingly as of the date of its original entry, and, together with the order denying a new trial, will

stand affirmed.   The judgment for costs in the court below is not to be disturbed.   Respondent to recover costs on appeal.

*Reversed, with directions.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

