WHITE, RESPONDENT, *v.* CHICAGO, M. & P. S. RY. CO. ET AL., APPELLANTS.

(No. 3,398.)

(Submitted September 14, 1914.   Decided September 29, 1914.)

[143 Pac. 561.]

*Personal Injuries—Master and Servant—Railroads—Pleading and Proof—Evidence—Technical Error—Effect—Witnesses—Weight of Evidence—Discretion—Instructions—Statement of Issues—Excessive Verdicts.*

Personal Injuries—Pleadings and Proof—Admission of Irrelevant Testimony—Harmless Error.
    1.   Error in admitting evidence bearing upon defects in the braking appliances and the competency of the engineer in charge of the locomotive attached to the train on which plaintiff switchman was injured, because irrelevant to the issue which was whether the engineer was negligent in moving the train in defiance of a stop signal, *held* to have been rendered harmless by instructions clearly stating the question at issue and that plaintiff could recover only upon proof of the negligence alleged, and not upon proof of any other.

Trial—Evidence—Admissibility—Technical Error—Effect.
    2.   Technical error in the admission of evidence is not ground for reversal unless it appears that the rights of the party complaining have been prejudiced by it.

Same—Weight of Evidence—Instructions—Singling Out Witnesses—Error.
    3.   While it is proper for trial courts to caution the jury that in weighing evidence they should consider the interest or bias of witnesses apparent by them in testifying, and credit their testimony accordingly, they may not ordinarily single out a particular witness and intimate that by reason of his interest or bias he should be regarded as discredited.

    [As to instruction to jury to disregard evidence of witnesses who are competent to testify, see note in 86 Am. Dec. 328.]

Same—Weight of Evidence—Instructions—Discretion.
　　4.　The district court has a wide discretion as to the extent it should go in submitting specific instructions relative to the weight the jury should accord evidence brought to their attention.
　　[As to what are proper subjects of instructions to jury, see note in 72 Am. Dec. 538.]

Same—Instructions—Statement of Issues.
　　5.　Refusal of a requested instruction embodying a statement of the issues made in the pleadings is not reversible error where, from the charge taken as a whole, the jury could not have been mistaken as to what the issues were.
　　[As to propriety of instruction referring jury to pleadings to determine issues, see note in Ann. Cas. 1912C, 227.]

Personal Injuries—Excessive Verdicts.
　　6.　*Held,* that a verdict in the sum of $15,000 in favor of a trainman, thirty years of age at the time of the accident and earning $2,100 per annum, for the loss of his left arm below the elbow, was not so large as to force the conclusion that in making the award the jury were influenced by passion and prejudice, rendering a new trial necessary.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Robert H. White against the Chicago, Milwaukee & Puget Sound Railway Company and another. From a judgment in favor of plaintiff and an order denying them a new trial, defendants appeal. Affirmed.

*Messrs. George F. Shelton, Fred J. Furman,* and *A. J. Verheyen,* for Appellants, submitted a brief; *Mr. Furman* argued the cause orally.

Instruction numbered 10–A, tendered by the defendants and refused by the court, should have been given. It has the sanction of an eminent court. (*Lovely* v. *Grand Rapids & I. Ry. Co.,* 137 Mich. 653, 100 N. W. 894; citing, with approval, *McDonell* v. *Rifle Boom Co.,* 71 Mich. 61, 38 N. W. 681.) It does not comment on any fact in evidence or the testimony of any witness. On the contrary, it simply cautions the jury not to draw unfair inferences. Its refusal is prejudicial error, and, we believe, entitles appellants to a retrial.

Instruction numbered 11–A was a fair statement of the law, not covered by any other instruction, and should have been given on the authority of, among other cases, *Lehane* v. *Butte Electric*

*Ry. Co.,* 37 Mont. 564, 97 Pac. 1038, and cases following that authority.

Instruction numbered 12–A, refused by the court, outlines the issues, presents, without any comment on the facts or any comment on the testimony of any witness, the questions of fact to be determined by the jury, and states the law applicable. This court has repeatedly approved of such an instruction. (*Rand* v. *Butte Electric Ry. Co.,* 40 Mont. 398, 107 Pac. 87, citing and approving. *Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215.)   *Hardesty* v. *Largey Lumber Co.,* 34 Mont. 151, 86 Pac. 29, approves such an instruction, as does *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70.   In the case of *Nelson* v. *Boston & Montana etc. Co.,* 35 Mont. 223, 88 Pac. 785, this court declares it to be the duty of a trial judge to fit the instructions to the testimony of the particular case.   Here no instruction defined or outlined the issues.   *Lynes* v. *Northern Pacific etc. Co.,* 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81, approves such an instruction.   The case of the *First Nat. Bank of Portland* v. *Carroll,* 35 Mont. 302, 88 Pac. 1012, condemns the giving of an abstract legal doctrine without fitting it to the evidence, the purpose being to enable the jury to see the issues and to understand the law applicable to the facts.   A similar instruction was approved in the *Lehane Case, supra.*

The question of damages has vexed this court before, and doubtless it will again, and often.   The question was considered at great length in the case of *Flaherty* v. *Butte Electric Ry. Co.,* 43 Mont. 151, 115 Pac. 40.   In that case reference is made to *Cleveland etc. Ry. Co.* v. *Hadley,* 170 Ind. 204, 16 L. R. A. (n. s.) 527, 82 N. E. 1025, 84 N. E. 13, as that case is reported in 16 Ann. Cas. 1, and the collation of cases there made.   We can add practically nothing to the tables of cases to which the attention of this court has been so frequently called.   In the *Flaherty Case,* after due consideration, the court determined the standard of damages for this state.   The Flaherty boy had a greater expectancy of life than this plaintiff, and his injuries were graver than plaintiff's.   We urge that the verdict in this

case is far in excess of any amount that has heretofore been allowed by this court for similar or equal damages.

In the case of *Rogers* v. *Allen Lumber Co.,* 129 La. 900, 39 L. R. A. (n. s.) 202, 57 South. 166, the court reduced a verdict of ten thousand dollars ($10,000) to seven thousand five hundred dollars' ($7,500). This was the case of a boy nineteen years old, dependent on physical labor, who lost his right hand.

*Messrs. Canning & Geagan,* for Respondent, submitted a brief; *Mr. M. F. Canning* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff brought this action to recover damages for a personal injury suffered by him during the course of his employment as a switchman by the defendant railway company. The jury awarded him a verdict for $15,000. The defendants have appealed from the judgment entered thereon and an order denying them a new trial.

The accident occurred at about 10:30 o'clock on the evening of August 10, 1912, in the switchyard of the defendant railway company at Butte. The defendant Hupert was in charge of a switch engine. The plaintiff was employed in coupling cars to be moved from place to place about the yard in making up trains. It is alleged in the complaint that it was the duty of plaintiff to couple the engine operated by the defendant Hupert to a line of cars on the defendant company's line of railway; that it was necessary for the plaintiff while doing so to adjust the drawhead on the car to be coupled with the engine, in such a manner that the coupling could be readily made; that while he was so engaged, and without any warning signal to him, and in defiance of a stop signal theretofore given by him to the engineer, the said defendant moved the engine against the plaintiff, causing the injury complained of. The injury is described as the loss by plaintiff of his left arm below the elbow, it having

been crushed between the coupling of the engine and that of the car, to. such an extent that amputation of it was necessary.

The defendants by separate answers tendered issue upon all the allegations of the complaint, except that the defendant Hupert and the plaintiff were in the employ of the company. As is usual in such cases, there is much conflict in the evidence as to how the accident occurred, the plaintiff and the defendant Hupert being the only witnesses who testified directly in this behalf. The plaintiff stated that he signaled to Hupert with his lantern, to move the engine slowly forward, which he did; that the engineer bumped the cars, but the knuckles in the coupling failed to engage because the drawhead had been shifted out of line; that the impact drove the line of cars several feet along the track; that the plaintiff, who was riding on the pilot of the engine, thereupon having signaled to Hupert to stop, stepped to the ground and walked forward to adjust the drawhead; and that while he was in the act of putting the drawhead into position with his left hand, Hupert, in disregard of the stop signal, moved the engine forward, with the result that plaintiff's hand and wrist were caught between the knuckles and crushed. The testimony of Hupert directly contradicted that of plaintiff in all essential particulars. He testified that upon a signal from plaintiff to come forward slowly, he did so until he bumped the. cars, having had no other signal; whereupon he ascertained from plaintiff's outcry that he had been caught and injured. To quote. his own words: "The signal I received was a signal to proceed, that is, keep on coming slow. * * * I should judge that the head end of my engine at that time was about half a car length away or something over twenty feet, probably, from the head end of the car. When I got this signal to come ahead slow I slowed the engine up a little with the air, straight air-valve, and released it and let it drift into the car free. When I hit the car I applied the straight air. The last signal I saw given to me by Mr. White was his signal to keep coming, and I should judge that was possibly ten seconds before I bumped. At the time the engine bumped the gondola I should

judge the engine was going at about the rate of two miles an hour, about an ordinary coupling. During all of the time which elapsed after I came out on to the switch and then started to go east on the lead, I was watching for signals from Robert White. * * * I did not receive a signal to stop on this night. From the time my engine passed the switch going east on the lead until I bumped into the car, the engine did not come to a stop. I bumped into that car once. I never saw any more signals from Mr. White.''

The defendants, conceding that the evidence is sufficient to justify a verdict for plaintiff, contend that they were entitled to a new trial because of errors committed by the court in its rulings in admitting and excluding evidence, in refusing requested instructions, and in denying a new trial on the ground that the verdict is excessive.

With reference to the several assignments of error upon the rulings of the court in admitting and excluding evidence, counsel preface their argument with this statement: ''While the ruling made in any single instance cited may not have been so prejudicial as to justify appellants in seeking a reversal upon that ground alone, the cumulative effect of these rulings was most prejudicial.'' Attentive consideration of the assignments, however, has led us to the conclusion that no prejudice was wrought by them, whether they be viewed separately or collectively. For [1] illustration: Counsel for plaintiff were permitted, over objection, to cross-examine Hupert as to how many pounds of air pressure were necessary to stop the engine when going at the speed stated by him, at the time of the accident, and what interval elapsed from the moment the air was applied until the brakes were set. If the injury suffered by the plaintiff had been alleged to have been caused by defect in the brake appliances, the evidence would have been relevant and material. It did not reflect even remotely upon the question at issue, *viz.*, whether the engineer moved the train without a signal and in defiance of the stop signal theretofore given by plaintiff. The inquiry should not have been permitted, but that the defendants did not suffer

prejudice is, we think, made clear when attention is given to these paragraphs of the charge submitted to the jury:

"1-A.  You are instructed that the plaintiff's complaint does not allege that there was any defect in the car or the engine, or that any attachment upon either car or engine was defective; and no damages are sought by him on account of any such defect, if any, and therefore this matter is eliminated entirely from your consideration."

"8-A.  You are instructed that if you believe from the evidence in this case that as engineer Hupert was running east upon the passing track or lead track immediately prior to the accident, and that the last signal given by the plaintiff in this case was the signal to continue to come ahead slowly, and that pursuant to the signal engineer Hupert did proceed to go ahead slowly, and at no time stopped the engine until the coupling was made with the car, then your verdict must be for the defendants."

"9-A.  You are instructed that in this case the plaintiff must prove to your satisfaction, by a preponderance of the evidence, that when engineer Hupert was running eastward upon the lead or passing track, switchman White gave him a signal to stop, and that he did stop; and that thereafter he started the engine again and ran into the car without any order to move ahead and in disregard of the order to stop; or your verdict must be for the defendants."

By these instructions the jury were explicitly directed to ignore the testimony brought out by the examination, and to find for the defendants (1) if they believed the statement of the engineer as to the circumstances of the accident, and (2) if they were not satisfied by a preponderance of the evidence that the plaintiff's statement of the circumstances of the accident was true.  The question at issue was thus clearly stated, so that the jury could not fail to understand that plaintiff was entitled to recover only upon proof of the negligence alleged in the complaint, and not upon proof of any other.  Aside from this, the evidence brought out was not so substantial as to justify an infer-

ence that the engine was defective in any respect, or not suitable to the purpose for which it was used.

The court permitted counsel for plaintiff to show by this witness that the day of the accident was his "service day" as engineer, that is, that he was then in charge of an engine for the first time. The fact thus brought out was not relevant to the issue on trial, because it related to the competency of the engineer; yet, in view of the instructions quoted above, we do not think prejudice was wrought.

By another ruling, evidence offered to impeach the plaintiff, and perhaps remotely competent for that purpose, was excluded; but we do not think this item of evidence of sufficient substantial value to justify the reversal of the judgment because it was [2] excluded. In the trial of almost every case more or less technical error intervenes. Such error is not ground for reversal unless it appears that the rights of the parties have been prejudiced by it. (Rev. Codes, sec. 6593.) We do not think the final result would have been different had the ruling complained of been otherwise.

It is argued that the court erred in refusing to submit the following instruction: "10–A. You are instructed that you may take the testimony of these railroad men, and you may take into consideration any interest that they might have which would in any way influence their testimony here; but you must not draw any inference unfair to these men, simply because they are in the employ of the railroad company. You should compare and consider their testimony, and that of the plaintiff; consider the interest that each has; then weigh up the testimony of both sides, and see where the truth lies, and what your duty would be in giving weight to their testimony; and then you should find a verdict without any prejudice or sympathy, which will do justice between the parties."

It is always competent for the jury in weighing the evidence to take into consideration the interest any particular witness has in the result of the trial, or any bias he may entertain by reason of his relation to either of the parties, to ascertain

whether such interest or bias has in any degree affected the
[3] truth of his statement. It is also competent for the court to
caution the jury to consider whether such interest or bias is
apparent, and, if so, to weigh and credit the testimony accord-
ingly.  The instructions, however, may not ordinarily single out
a particular witness and call the attention of the jury to his
testimony or circumstances evincing his interest, nor may they
intimate either that he is interested or biased or that he is, for
this reason, to be regarded as discredited.  (*Wastl* v. *Montana
Union Ry. Co.,* 17 Mont. 213, 42 Pac. 772.)  In any case, the
[4] court has a wide discretion as to the extent it should go in
submitting specific instructions in this behalf.  (Rev. Codes, sec.
8028.)  Ordinarily, a general instruction embodying the provi-
sions of the statute (Rev. Codes, sec. 7864) is sufficient.  The
requested instruction may be assumed to be correct in point of
law; nevertheless, we think the purpose of it fully covered by
an instruction given, wherein the jury were told that they
should determine the credit to be given to the witnesses, after
considering the opportunity of the several witnesses for seeing
or knowing the things about which they testified; their conduct
and demeanor while testifying; their interest or lack of inter-
est, if any, in the result of the case; the relations or connection,
if any, between the witnesses and the parties; the apparent con-
sistency, fairness and congruity of their evidence; the probabil-
ity or improbability of the truth of their several statements in
view of all the other evidence, *etc.*

These remarks dispose of the assignments of error upon the
refusal by the court of requested instruction 11–A, which
would have instructed the jury that while parties are competent
witnesses, their interest in the result should be considered in
weighing their testimony.

Requested instruction 12–A embodied a statement of the issues
made by the pleadings.  It is insisted that the refusal to give it
[5] was reversible error, and *Rand* v. *Butte Electric Ry. Co.,*
40 Mont. 398, 107 Pac. 87, is cited as conclusive.  It was held
in this case that it is the better course to pursue for the court to

define clearly the issues submitted, and that in a given case refusal or neglect to pursue this course might be reversible error. But this is not the invariable rule; for though the complaint was made that the court had failed to define the issues, it was held that since the charge, taken as a whole, defined the issues so distinctly that the jury could not have been mistaken as to what they were, the complaint was groundless. Equally without merit is the contention made in this case. Under instructions 8–A and 9–A, *supra,* the jury were informed in terms that could not be mistaken that they should find for the defendants if they did not believe the plaintiff's relation of the circumstances of the accident was true; in other words, they must have understood that the issue was one of veracity as between the plaintiff and engineer Hupert.

At the time of the accident the plaintiff was thirty years of age and in good health. He had been working as a switchman **[6]** for four years and was earning $175 per month, or $2,100 per annum. His expectancy was 35.33 years. It was shown that an annuity for this amount would cost $40,278. The plaintiff is wholly incapacitated to pursue employment in the railway service or to pursue any occupation wherein effective manual labor is required. It is conceded that the evidence justifies the finding by the jury that the injury was caused by the negligent misconduct of Hupert, the engineer. This concession involves the further concession that plaintiff is entitled to such an amount as will compensate him, not only for the loss of his arm and the resulting disability, but also for the pain and suffering he has undergone, as well as the inconvenience he must endure the remainder of his life. The sum awarded to him is large—perhaps it reaches the limit which the courts have permitted in this class of cases; but once the concession is made that he is entitled to recover at all, there is nothing in the record upon which this court would be warranted in declaring that the jury in fixing the amount which will compensate him, were influenced by any other motive than a conscientious consideration of the facts disclosed. In the very nature of things there can be no

fixed measure of compensation; nor may the award in any given case be accepted as a conclusive standard in any other case, because, it being the province of the jury to determine what the amount shall be, the sums awarded in different cases vary as widely as do the individual views, capacities and dispositions of the men who constitute juries, chosen, as they are, by lot from the body at large of the citizens of the community. So long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid, unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive. On this subject we give approval to the following from the text of 1 Graham & Waterman on New Trials, page 451: "It is clear the reason for holding parties so tenaciously to the damages found by the jury in personal torts is, that in cases of this class there is no scale by which the damages are to be graduated with certainty. They admit of no other test than the intelligence of a jury, governed by a sense of justice. It is, indeed, one of the principal causes in which the trial by jury has originated. From the prolific fountain of litigation, numerous cases must daily spring up, calling for adjudication for alleged injuries, accompanied with facts and circumstances affording no definite standard by which these alleged wrongs can be measured, and which from the necessity of the case must be judged of and appreciated by the view that may be taken of them by impartial men. To the jury, therefore, as a favorite and almost sacred tribunal, is committed, by unanimous consent, the exclusive task of examining those facts and circumstances and valuing the injury, and awarding compensation in the shape of damages. The law that confers on them this power and exacts of them the performance of the solemn trust, favors the presumption that they are actuated by pure motives. It therefore makes every allowance for different dispositions, capacities, views and even frailties in the examination of heterogeneous matters of fact, where no criterion can be applied; and it is not until the result of the deliberations of the

jury appears in a form calculated to shock the understanding, and impress no dubious conviction of their prejudice and passion, that courts have found themselves compelled to interpose.''

While in *Flaherty* v. *Butte Electric Ry. Co.*, 43 Mont. 141, 115 Pac. 40, *Knuckey* v. *Butte Electric Ry. Co.*, 45 Mont. 106, 122 Pac. 280, and other cases, this court has felt justified, upon the facts disclosed, to reduce the amounts of damages returned by the juries, we do not feel justified by anything in this record to form the conclusion that the jury were influenced by passion and prejudice in finding the facts fixing liability upon the defendants, or in determining the amount which the plaintiff ought to recover.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.