ASHLEY, Appellant, *v.* SAFEWAY STORES, INC., et al.,
Respondents.

(No. 7,337.)
(Submitted June 10, 1935. Decided June 28, 1935.)
[47 Pac. (2d) 53.]

*Mr. H. J. Freebourne* submitted a brief in behalf of Marie Ashley as Appellant from the judgment in favor of Defendant Safeway Stores, Incorporated, and one in her behalf as Respondent on the appeal of Defendant Eugene Ballard from the judgment against him, and argued the cause orally.

*Mr. R. F. Gaines,* for Appellant Eugene Ballard, submitted a brief and argued the cause orally.

*Messrs. Kremer & Kremer* and *Mr. H. D. Carmichael,* for Respondent Safeway Stores, Incorporated, submitted a brief; *Mr. Alf C. Kremer* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

The plaintiff, Marie Ashley, brought this action against defendants, Safeway Stores, Inc., and Eugene Ballard to recover damages for injuries received in an automboile collision. On the evening of August 18, 1932, plaintiff was riding as a guest in the rumble seat of a Ford coupé driven by one William Kitt. Besides plaintiff and the driver, there were three other persons in the car. Carlotta Kennedy and Edward Sheehan were also riding in the rumble seat, and Mrs. Perkins rode in the front seat beside the driver. The car was traveling east from Butte

on the Butte-Helena highway in the direction of Helena. Plaintiff claims that they were moving at a moderate rate of speed and that the driver had the car lights on because it was then dark. Around 10 o'clock P. M. they arrived at a point some ten or twelve miles northeast of Butte. The road at that point is commonly known as the Elk Park highway. While driving along the highway and upon the right side of the road, they ran into the rear end of a Ford truck standing upon the right side thereof facing in the direction of Helena. As a result of this collision, the Kitt car was thrown over upon its side to the west side of the road, inflicting injuries in varying degrees upon plaintiff and the other occupants.

The truck with which they collided was of 1½-ton capacity, and was loaded with more than 5,000 pounds of freight. It appears that during the day Eugene Ballard, driver of the truck, had left Helena and gone to Butte for the purpose of obtaining a load of groceries for the Safeway store in Helena. After procuring the groceries at a wholesale house in Butte, Ballard started on his return trip to Helena. When he reached a point on the Elk Park highway some ten or twelve miles from Butte, he had a flat tire. He had no spare tire, or anything with which to fix a flat tire. He therefore drove the truck over upon the right side of the highway, where he left it while he telephoned to Helena (a distance of some sixty miles) for another tire. It was while the truck was thus standing and awaiting the arrival of a new tire from Helena that the Kitt car ran into it. The evidence discloses that the truck was partly upon the gravel shoulder and partly upon the paved or oiled portion of the road, so that a car approaching from its rear and upon that side of the road would have to turn out toward the center of the road in order to pass safely around it. There were no lights burning on the truck either front or back.

At about the same time that the Kitt car approached the truck from the rear a car driven by one Owen approached from the opposite direction. The Owen car, proceeding upon its own side of the highway, passed the truck, and almost immediately thereafter passed the Kitt car, which was proceeding on the proper

side of the road in the opposite direction. Kitt and his companions, including plaintiff, said that they never saw the truck until after they had passed the Owen car and were almost upon it; that Kitt thereupon applied his brakes and attempted to swing around the truck, but could not avoid striking the rear end of it. Kitt explained his inability to see the truck by the fact that he was blinded by the lights of the Owen car, coupled with the fact that there were no signal lights showing upon the rear of the truck.

Seeking damages for the injuries sustained in the accident, plaintiff instituted this action against Ballard, as driver of the truck, and the Safeway Stores Company, as owner thereof and as Ballard's employer. The complaint alleges that the Safeway Company was owner of the truck, and that at all times mentioned and at the time plaintiff was injured Ballard was a servant and employee of the Safeway Company acting within the scope and course of his duties, as a driver of the truck. The complaint contains the ordinary allegations of negligence (that the truck was allowed to stand without lights upon the highway, etc.), and also allegations to the effect that plaintiff and Kitt were not guilty of negligence.

The defendants Safeway Stores Company and Ballard interposed separate answers. Both denied negligence, and set up pleas of contributory negligence. The Safeway Company denied that it was the owner of the truck or that Ballard was at any time a servant or employee of the Safeway Company.

Issue being joined, the case was tried before the court with a jury. At the close of plaintiff's case, both defendants moved for a nonsuit. Both motions were denied, and defendants proceeded to introduce evidence. At the close of all the evidence, each defendant moved separately for a directed verdict. The motion of the defendant Ballard was denied, and as against him the case was permitted to go to the jury. The motion of the Safeway Stores was sustained, and judgment was entered in its favor. The jury returned a verdict in favor of plaintiff and against defendant Ballard for the sum of $20,000, and judgment was entered thereon. After motion for new trial, an appeal was

prosecuted to this court. The case presents two appeals. The defendant Ballard has appealed from the judgment against him, and the plaintiff has appealed from the judgment entered on the directed verdict in favor of the defendant Safeway Company.

We will first consider the last-mentioned appeal. The question presented therein is whether the court erred in granting the motion of defendant Safeway Company for a directed verdict. Plaintiff sought to hold this defendant liable upon the principle of *respondeat superior*. She alleged in her complaint that the Safeway Company was owner of the truck and that Ballard was a servant and employee thereof. Thus it was incumbent upon plaintiff to prove those allegations in order to establish any liability on the part of the Safeway Company. "The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged as a result of the wrong." (*Clawson* v. *Schroeder,* 63 Mont. 488, 208 Pac. 924, 927.)

One of the grounds urged by the Safeway Company in support of its motion for a directed verdict was that "plaintiff herein has failed to establish by a preponderance of the evidence the allegations of her complaint to the effect that at the time and place of her alleged injuries Ballard was acting as a servant and employee of the defendant Safeway Stores, Inc.," and "that the uncontradicted evidence is to the effect that the defendant Ballard, at the time and place of the occurrence of said accident and the cause of plaintiff's injuries, was not a servant of the defendant Safeway Stores, Inc., and all of the evidence submitted at the trial permits of no inference to the contrary."

While the motion also urged other grounds, particularly with reference to the showing of contributory negligence, it is manifest from the record that it was on the grounds just quoted that the court based its action in sustaining the motion of Safeway Company for a directed verdict.

It must be observed that there was a total failure to prove the allegation that Safeway Company was owner of the truck. The proof is uncontroverted that at the time of the accident the

truck was owned by one E. L. Cloninger, not a party to the action, and who was at that time manager of the Safeway store in Helena, and that the Safeway Company never did own the truck. Two or three witnesses testified on behalf of plaintiff that they saw the truck immediately after the accident, and that at that time it bore the name "Safeway Stores" printed upon its side. This was the only competent evidence produced by plaintiff which tended in any manner to show ownership of the truck in the Safeway Company. On the other hand, the Safeway Company produced documentary evidence in the form of a conditional sales contract, and applications for license and certificate of title showing that Cloninger owned the truck on the date of the accident. In addition to that, Cloninger, Ballard, and Semrau (district manager of the Safeway Company) all testified positively that the truck was owned by Cloninger personally, and that the Safeway Company had no interest in it. All of this and other evidence to the same effect stands uncontradicted. Thus it was proved beyond question or doubt that the Safeway Company did not own the truck.

It remains only to be determined then whether, irrespective of the ownership of the truck, Ballard was an employee and servant of the Safeway Company at the time of the accident. The only proof submitted by plaintiff in support of her allegation to that effect was that the truck bore the name of Safeway Stores; that at the time of the accident it was carrying freight to the Safeway store in Helena. This was the most that any evidence produced by plaintiff tended to show. If there was any other evidence that would aid plaintiff's cause, it must be found in the evidence adduced by defendants, in the testimony of defendant's witnesses upon their direct or cross examination.

Cloninger testified that he was owner of the truck on the date of the accident; that at some time prior thereto he had purchased it from a dealer in Helena; that he was then manager of the store in Helena; that it was the practice of the Safeway store in Helena to purchase considerable merchandise from wholesale houses in Butte; that prior to the time when he bought the truck the freight from Butte to Helena was shipped by rail, and the

Helena Safeway store hired an independent truck owner to deliver groceries in Helena, and that such trucker also hauled the freight from the depot in Helena to the store, for which he was paid by the store; that he (Cloninger) thought that he could make some extra money for himself (aside from his compensation as manager of the store) if he could buy a truck and secure all the trucking and hauling business for the store in Helena, which was then being done either by the railroad or some independent truck owner; that he thereupon took the matter up with Mr. Semrau, the district manager, who agreed that, if Cloninger bought a truck, he might haul the freight from Butte to Helena at a certain price per hundred pounds instead of shipping it by rail, and that he could have the delivery business for the Helena store on the basis of fifteen cents per delivery, and also the hauling of the freight from the depot to the store at the rate of five cents per hundred pounds. Cloninger then bought the truck and proceeded to operate on the basis outlined. For the freight and deliveries hauled, Cloninger as manager of the store paid himself personally the money which otherwise would have been paid to the railroad or the independent truck owner under the arrangement which existed prior to the time he bought the truck. He hired Ballard to drive the truck, and paid him $20 per week. Ballard's salary was paid by Cloninger personally, and not by the Safeway Company. Cloninger testified that he operated the truck as an independent contractor entirely separate and apart from his duties as manager of the Safeway store; that Ballard was the servant and employee of Cloninger and not of the Safeway Company; and that Ballard never was at any time in the employ of the Safeway Company; and that the Safeway Company never had any control or supervision over him. This testimony of Cloninger's was substantiated in practically every detail by Ballard and Semrau, both of whom testified quite fully concerning the arrangement. All of this testimony stands uncontradicted. It was also shown by the testimony of one Mead, chief accountant of the Industrial Accident Board, and by the records and files of that board, and by other witnesses, that the Safeway Company did not have any truck drivers in its employ

or upon its pay-roll, and that Ballard's name did not appear upon the pay-roll of defendant company in any capacity.

Viewing all evidence upon this point in the light most favorable to plaintiff, still it is manifest that such evidence did not establish any presumption that the truck was the property of the Safeway Company, nor that Ballard was in the employ of the Safeway Company. In its most favorable light, that evidence created only an inference that the ownership of the truck was in the Safeway Company. Upon such an inference plaintiff seeks to establish another inference, viz., the employment of Ballard by the Safeway Company. These inferences were met by direct and positive evidence, both documentary and oral, all of which was clear, convincing and uncontradicted. The test for determining whether Ballard was acting as the servant of Safeway Company at the time of the accident is to ascertain whether he was subject to the orders and control of that company, and was liable to be discharged by it for disobedience or misconduct. (See *Ellinghouse* v. *Ajax Livestock Co.*, 51 Mont. 275, 152 Pac. 481, L. R. A. 1916D, 836.) A reading of the record discloses that there can be no question but that Cloninger, in operating the truck, was acting as an independent contractor, and not in the capacity of an agent or employee of the Safeway Company. The conclusion is unavoidable that the truck was not the property of the Safeway Company and that Ballard was not a servant, agent or employee of that company, and was not subject to its orders. Plaintiff's evidence did no more than create a disputable presumption, against which the evidence submitted by the defendant company preponderates. This court has held that, "when the evidence preponderates against a disputable presumption, it 'fades away in the face of contrary facts.'" (*In re Wray's Estate*, 93 Mont. 525, 19 Pac. (2d) 1051, 1054.) In the case of *Monaghan* v. *Standard Motor Co.*, 96 Mont. 165, 29 Pac. (2d) 378, 380, it was said: "If the evidence tending to overcome the presumption that the automobile was being driven by the servant in the course of his employment is clear, convincing, and uncontradicted, and if only one in-

ference can be drawn by reasonable men therefrom to the effect that the servant was not then engaged in the master's business within the scope of his employment, then this presumption is entirely overcome; it fades away, and a directed verdict is proper." (See, also, *Welch* v. *All Persons*, 85 Mont. 114, 278 Pac. 110; *Nichols* v. *New York Life Ins. Co.*, 88 Mont. 132, 292 Pac. 253; *Maki* v. *Murray Hospital*, 91 Mont. 251, 7 Pac. (2d) 228; *Lister* v. *Donlan*, 85 Mont. 571, 281 Pac. 348, 72 A. L. R. 1.)

Accordingly, we hold here that the district court was correct in granting the motion of the Safeway Company for a directed verdict.

In addition to the question just discussed, plaintiff has also in this appeal as against the Safeway Company presented a great many other specifications of error. In many instances the specification of error is merely stated and repeated without any citation of authorities or argument. This court has laid down the rule that specifications of error not argued in appellant's brief will not be considered. (*Winterscheid* v. *Reichle*, 45 Mont. 238, 122 Pac. 740; *Bielenberg* v. *Higgins*, 85 Mont. 56, 277 Pac. 631.) Accordingly it will be necessary for us to consider only the few specifications which plaintiff has apparently deemed of sufficient importance to argue.

Error is predicated upon the ruling of the court overruling plaintiff's objection to the request of the two defendants that they have four peremptory challenges each, in the selection of the jury. Defendant contends that under the authority of *Mullery* v. *Great Northern Ry. Co.*, 50 Mont. 408, 148 Pac. 323, and *Chenoweth* v. *Great Northern Ry. Co.*, 50 Mont. 480, 148 Pac. 330, the court was correct in granting the request of defendants in this matter. It is unnecessary to decide whether the position thus taken by defendant is correct. Since the court granted a directed verdict in favor of this defendant (Safeway Company), the plaintiff could not possibly have suffered any prejudice by the action of the court in allowing the additional challenges. As against the defendant, Ballard, the case was submitted to the jury, and a verdict was returned in plain-

tiff's favor for $20,000. Thus it is manifest that plaintiff has no basis for complaint as to the personnel of the jury or the allowance of additional challenges in the selection thereof.

Error is urged on the court's ruling with reference to the admissibility of certain testimony of Irene Nelson, a witness for plaintiff. She testified that she came upon the scene of the accident shortly after it had occurred, and that she then engaged in a conversation with Ballard. She was asked to relate that conversation. The defendant Safeway Company objected to such testimony on the ground that there was "no evidence that at the time these statements were made by the driver of the truck * * * that the defendant Ballard was an agent of the defendant Safeway Stores, or that the relation of master and servant existed between them." The court sustained the objection of the Safeway Company, and admitted the testimony only as against the defendant Ballard. The witness then testified: "This man [Ballard] said he was the driver, and he said I don't own it [the truck]; it is owned by the Safeway Stores." Plaintiff contends that this evidence was admissible as against the Safeway Company as well as against Ballard, and that the court erred in ruling otherwise.

There is no merit in this contention. Nowhere in the plaintiff's case in chief is there any tangible evidence that Ballard was an employee or servant of the Safeway Company. The only evidence on this point was to the effect that the name of the Safeway Company appeared on the truck. All this evidence did was to create an inference that the Safeway Company was owner of the truck. Having thus created that inference, plaintiff attempted to draw therefrom another inference, viz., that the relationship of master and servant existed between Ballard and the Safeway Company. This it could not do. An inference must be founded on a fact legally proved. (Sec. 10603, Rev. Codes Mont. 1921; *Harrington* v. *H. D. Lee Mercantile Co.*, 97 Mont. 40, 33 Pac. (2d) 553.) While from one fact found another fact may be presumed if the presumption is a logical result, a fact presumed may not be made the basis for a

further presumption. (*Doran* v. *United States Building etc. Assn.*, 94 Mont. 73, 20 Pac. (2d) 835.)

In the absence of any evidence of the relationship of master and servant existing between the Safeway Company and Ballard, the statements were not admissible as against the Safeway Company. "Before a declaration of an agent can bind the principal, it must be shown, first, that he was an agent, secondly, that such declarations were made in and about a matter concerning which the agent had authority from the principal to act, and next, that he was acting under and by virtue of his authority as such agent." (2 Jones on Evidence, 2d ed., sec. 946.) A declaration of an agent made at or near the time of the accident is not admissible as part of the *res gestae* or otherwise to prove the fact of agency. (Anderson's "An Automobile Accident Suit," sec. 540, n. 624.)

Error is predicated upon the ruling of the court in sustaining defendant's objection to a question asked the witness Sheehan. The question asked pertained to the settlement of a cause of action which the witness himself had previously brought against the two defendants in this case. We think the court was correct in sustaining the objection. It is true that defendants did on cross-examination of this witness interrogate him as to certain statements made in his deposition in the former case. However, this was done only for the purpose of impeaching the witness; and did not justify plaintiff in delving into any settlement or compromise that may have occurred in the former case.

The law favors compromises. (*Black* v. *Martin*, 88 Mont. 256, 292 Pac. 577.) "An offer of compromise is not an admission that anything is due." (Sec. 10684, Rev. Codes Mont. 1921.) Hence evidence of the compromise was irrelevant. It could serve no useful purpose, and was therefore properly ruled out. (See *Huffine* v. *Lincoln*, 53 Mont. 474, 146 Pac. 888; *Continental Oil Co.* v. *Bell*, 94 Mont. 123, 21 Pac. (2d) 65.)

The remaining specifications of error either were not argued or are not of sufficient importance to merit discussion. Suffice it to say that we have read the record carefully and are unable to find any merit in any of them. The court did not err in

sustaining the motion of the Safeway Company for a directed verdict. The judgment entered thereon must be affirmed.

Taking up next the appeal of the defendant Ballard from the ▮▮ judgment entered against him, we find the first two specifications of error predicated upon the court's refusal to grant this defendant's motion for a directed verdict or a nonsuit. It is contended that, even if there was evidence justifying a finding that Ballard was negligent, still that negligence was not the proximate cause of the collision, that Ballard's alleged negligence had expended itself long prior to the accident, and that the negligence of the driver of the Kitt car was a contributing element, and the proximate cause of the accident. Much emphasis is placed upon the fact that there was some evidence to the effect that the accident occurred on a bright moonlight night, along the course of a straight piece of road, and that shortly prior to the accident several other cars had passed the truck upon the highway without any apparent difficulty, and other evidence of similar import. It is argued that "the record demands either one of two findings with respect to Kitt's operation of his car, the first being that he permitted it to run at a rate of approximately twenty miles per hour when he could see nothing at all, and this must be negligence. (Citing authorities.) The second is that as he drove along approaching the truck, the lights of the Owen car did not interfere with his vision ahead, that he could have seen objects at least 150 feet ahead in advance of his car, he could have stopped his car within six feet, but, nevertheless, ran into the truck when there was ample space to have gone around it, and this certainly was negligence,"—citing *Fulton* v. *Chouteau County Farmers' Co.*, 98 Mont. 48, 37 Pac. (2d) 1025, 1031. No useful purpose would be served by an extended recital of the evidence. After a careful reading of the record, we are satisfied that, while it may be that there is sufficient evidence in the record to justify a finding by the jury in accordance with the above contention, still under all the evidence as disclosed by the record we cannot agree with defendant's contention that such a conclusion is mandatory or that no other finding could be reasonably made.

There is no merit in the contention that any negligence on the part of Ballard had expended itself prior to the accident. His negligence in allowing the unlighted truck to stand upon the highway in the dark continued as long as he left it standing there in that manner. It is true, as defendant points out, that, while motion is the law of the road, Kitt was not entitled to assume that the highway would be at all times unobstructed in the line of his travel. (*Morton* v. *Mooney*, 97 Mont. 1, 33 Pac. (2d) 262.) Kitt was entitled to assume that a truck standing upon the highway at night would display lights both upon the front and rear thereof. Section 1753, Revised Codes 1921, provides in part as follows: "During the period between one hour after sunset and one hour before sunrise, every motor vehicle * * * shall display two white lights in front * * * and one light in the rear." A violation of this statute constitutes negligence. (*Simpson* v. *Miller*, 97 Mont. 328, 34 Pac. (2d) 528.) Whether such negligence was the proximate cause of the accident or whether plaintiff was barred by reason of contributory negligence of Kitt was a question for the jury. (*McNair* v. *Berger*, 92 Mont. 441, 15 Pac. (2d) 834; *Fulton* v. *Chouteau County Farmers' Co.*, supra.)

In the last-cited case it was said: "The test as to contributory negligence on the part of plaintiff in such a case as this, is, Did he, or did he not, in the circumstances, act as would an ordinarily prudent man? This question, with that of proximate cause and, consequently, contributory negligence, is ordinarily for the jury. [Citing authorities]; and it has been said that where that plaintiff had a verdict notwithstanding his negligence, it was supported on the theory that the jury did not consider it the proximate cause. (*Brown* v. *Central Pac. Ry. Co.*, 2 Cal. Unrep. Cas. 730, 12 Pac. 512.)"

In this case, if there was any negligence on the part of Kitt, the jury evidently did not consider it the proximate cause of the accident. It is obvious that they found that the proximate cause was the negligence of defendant in leaving the unlighted truck upon the highway in the dark. The record discloses that there was ample evidence upon which to base such a finding.

There is no force in the suggestion that such a conclusion militates against the decision of the court in the case of *Fulton* v. *Chouteau County Farmers' Company,* supra. On the contrary, as we have indicated, that case sustains the proposition that in a situation such as that presented here the question of proximate cause and contributory negligence is properly submitted to the jury. Viewing all the evidence in the light most favorable to defendant, the most that can be said is that it presents a conflict upon which reasonable minds might draw different conclusions. Under such circumstances, the matter does not present a question of law for the court. It presents rather a question of fact for the jury. (*Fulton* v. *Chouteau County Farmers' Co.,* supra; *Aulio* v. *Miller,* 92 Mont. 150, 11 Pac. (2d) 1039; *McNair* v. *Berger,* supra.) It follows that the court did not err in refusing to take the case from the jury.

Complaint is made of the court's refusal to give certain instructions requested by defendant. These instructions would have withdrawn from the consideration of the jury certain alleged acts of negligence; i. e., negligently leaving Butte without a spare tire or the means of repairing flat tires; failing to park three feet farther to the right along the course of the highway; failing to have lights upon his truck; failing to see and park upon the old highway where it entered the new; telephoning to Helena for a spare tire instead of telephoning to Butte; failing to give some signal indicating the presence of his truck upon the highway. These acts were all set out in the plaintiff's complaint and alleged to be acts of negligence on the part of defendant. Referring to these allegations, defendant contends that ''in some instances there was an entire lack of testimony; in others, though there was evidence as to the act charged, there was no evidence justifying a finding that the act of commission or omission was a negligent one.'' Defendant argues that upon appropriate request being made therefor the court should have withdrawn from the jury's consideration such unproved allegations of negligence—citing *Herzig* v. *Sandberg,* 54 Mont. 538, 172 Pac. 132.

We find this contention to be without force or merit. Practically all of the allegations in question are either admitted in

the pleadings or substantiated by at least some evidence. Thus it became a question for the jury to determine whether the act or omission had occurred as alleged and, if so, whether it comprised negligence on the part of defendant.

Even, however, if defendant was correct that some of the ▮▮▮ allegations in question were without any support in the evidence, we fail to see wherein he suffered any prejudice. The jury was instructed that their decision could not be reached by speculation, guess or conjecture, in any particular, but that it must be based upon admissions in the pleadings or in stipulations, testimony of witnesses, and proper inferences therefrom. By this general instruction any allegations which were not substantiated by the evidence or by admission in the pleadings were necessarily eliminated from the jury's consideration. No further instructions were necessary to effectuate that result. A careful reading of all the instructions given discloses that on the whole they contain a fair and comprehensive statement of the law applicable to the facts in the case.

It is next contended that the verdict of the jury is contrary to the law, in that a finding was required that Kitt was negligent. The jury was instructed that, if they found that Kitt was guilty of negligence and that such negligence was the proximate cause of the accident, then they must find for the defendant. This, of course, became the law of the case. Defendant contends that under the decision in the case of *Fulton* v. *Chouteau County Farmers' Company*, supra, there can be no other conclusion than that Kitt was guilty of negligence.

We cannot agree with this contention. As we have already indicated, there was sufficient evidence to go to the jury upon the question of contributory negligence and proximate cause. The verdict is supported by ample substantial evidence, and it does not in any way run counter to the decision in the *Fulton Case*. In fact, the *Fulton Case* supports the proposition that such a question is a matter for the determination of the jury, and that, even though the jury finds that plaintiff was himself negligent, still it may find that such negligence was not the proximate cause of the accident.

Finally, it is urged that the verdict for $20,000 is excessive; ██ ██ that it is so out of proportion to the extent of the injuries suffered by plaintiff as to indicate that it was inspired by passion and prejudice.

It is not necessary again to detail the evidence relating to the injuries of the plaintiff or to repeat the claims of the respective parties. A summary of the facts of the case will be sufficient on this point. Plaintiff was 27 years old at the time of the accident, and, in accordance with insurance mortality tables, she had a life expectancy of 37.43 years. She incurred doctors' bills not to exceed $600. On the night of the accident she was taken to a hospital, where she received first aid from a doctor not a witness in the case. Later she received treatment from two medical men, Drs. Reichle and Maillet. While the accident occurred near Butte, she lived at Billings, 235 miles away. She had no medical attention at Billings. She explained that her husband was a railroad man, and she was able to get free transportation to Butte when necessary, and therefore did not contact any other doctors than those called upon the case in Butte. Her injuries as catalogued by her counsel in his brief constitute the following: Permanent shock to her nervous system; made permanently nervous; broken nose and septum, which is permanent; permanent mar of her facial appearance by nose; and permanent scar requiring six stitches over right eye; permanent injury to nasal breathing; permanent insomnia; permanent vertigo and dizziness; permanent headaches; permanent pains and cramping of pelvis; permanent dragging pains in back; permanent irregularity of menses; permanent sprain of sacro-iliac synchondrosis; permanent bursitis of both knees; permanent cystitus of bladder, causing inability to hold urine; permanent injury to right sciatic nerve; vision of right eye injured ever since accident; blurring of eyesight since accident (two last enumerated may not be permanent); doctors' bills of $600; discoloration of face and eyes; swelling and discoloration of arm; bruises and pains in many other parts of body.

Her testimony and the testimony of the doctors constitute the basis for the enumerated claims of injury. Dr. Thorkelson made

an examination of plaintiff under order of court some time in November or December of 1933. This was over a year after the accident and about six months before the trial of the cause. His testimony tended to minimize the extent and seriousness of the injuries to plaintiff. He listed the injury to the nose as being the only broken bone. He claimed that she did not complain to him of bursitis of the knees or the cystitus of the bladder at the time of his examination. These two items of injury were not recited in the complaint as originally drafted, but were added by amendment just before the trial of the cause.

Plaintiff was not a wage-earner and therefore was not able to establish any damage by reason of loss of time or earning. She does not claim to have had any hospitalization except the first aid. The evidence does not give any history of confinement to her bed or to her home for any appreciable length of time. The evidence further shows that between the time of the accident and the trial she had gained considerably in weight. Briefly, the contention of the defendant is that plaintiff suffered no considerably lasting or permanent injuries, and that the damages awarded by the jury were therefore excessive.

It is a well-established rule of this court, and of courts generally, that the amount of damages to be paid for personal injury is peculiarly within the province of juries, and that such findings are final and conclusive unless the results are such as to shock the conscience and understanding of a court. It is always difficult to decide just when and under what circumstances that kind of condition exists. We do not deem it our prerogative to substitute our judgment for the judgment of a jury in the ascertainment of damages where the finding is based upon conflicting evidence. The rule in such a situation is no different from that obtaining in all controverted fact issues properly submitted to juries. It is not a question of the amount this court would have awarded under the circumstances. It is not the amount which in our opinion would compensate the injured party; rather it is a question of what amount of damages will the record in the case support when viewed, as it

must be, in the light most favorable to the plaintiff. It is when the testimony—the facts of the case—fails to support and justify a verdict and judgment that the conscience and understanding of the court are shocked. Such a result must of necessity be shocking when it is understood as fundamental that solemn judgments of courts must be predicated upon definite and tangible supporting facts.

We believe it is our duty to leave undisturbed and to affirm any judgment, regardless of size or extent, that has reasonable support in the evidence, even though the evidence is conflicting and controverted. It is not our province to resolve such controversies; that problem is for the jury. But, where the amount of damages awarded cannot be reconciled with a conscientious interpretation of evidence or a rational understanding of the facts as a whole, the court may then say that its conscience and understanding are shocked. (*Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43.) Such a condition presents a matter of law rather than of fact. (See *In re Wadsworth's Estate*, 92 Mont. 135, 11 Pac. (2d) 788.)

In this case we are convinced, after carefully studying the record, that the evidence in its most favorable aspects may be said only to be sufficient to support a verdict not exceeding $10,000, which sum, we think, is a most liberal allowance under the facts of this case. We are convinced, furthermore, that any award in excess of that amount is without support in the evidence. For a discussion of this matter, we refer to the previous opinions of this court as found in the following cases: *Mullins* v. *City of Butte*, 93 Mont. 601, 20 Pac. (2d) 626; *Staff* v. *Montana Pet. Co.*, 88 Mont. 145, 291 Pac. 1042; *White* v. *Chicago etc. R. Co.*, 49 Mont. 419, 143 Pac. 561; *Brown* v. *Columbia Amusement Co.*, 91 Mont. 174, 6 Pac. (2d) 874; *Autio* v. *Miller*, 92 Mont. 150, 11 Pac. (2d) 1039; *Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308; *Tanner* v. *Smith*, 97 Mont. 229, 33 Pac. (2d) 547; *Fulton* v. *Chouteau County Farmers' Company*, 98 Mont. 48, 37 Pac. (2d) 1025.

The judgment of the district court entered in favor of Safeway Stores, Inc., is affirmed, appellant Ashley to pay the costs of her appeal as against the Safeway Stores, Inc.

In the matter of the judgment against Ballard, the cause is remanded to the district court, with directions to grant a new trial unless, within ten days after notice of the filing of the *remittitur* with the clerk of that court, the plaintiff shall file her written consent that the judgment for damages may be reduced to $10,000. If such consent is given, the judgment shall be modified accordingly as of the date of its original entry, and, as modified, shall stand affirmed. If plaintiff does not consent to such reduction of damages, the court is directed to grant a new trial. In case the reduction is accepted by plaintiff, each party shall pay his or her costs on the appeal.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.

Rehearing denied July 10, 1935.