DAVIS, Respondent, *v.* FREISHEIMER, Appellant.

(No. 5,274.)

(Submitted September 12, 1923. Decided September 26, 1923.)

[219 Pac. 236.]

*Personal Injuries — Master and Servant — Complaint — Sufficiency—General Demurrer — Technical Defects — Proximate Cause of Injury—Conflict in Evidence—Verdict Conclusive —Excessive Verdicts.*

Personal Injuries—Negligence—Causal Connection—General Demurrer—Complaint—Sufficiency.

1.  Complaint in an action for personal injuries sustained by plaintiff in falling into an elevator shaft on his employer's premises, alleging that the elevator was dangerous, that its doorway was left unguarded, that the corner where it was located was dark, that there was no device or lock to keep it from creeping upward, thus leaving a dangerous opening between the bottom of the cage and the floor at which it was stopped, and that defendant was negligent in these particulars, was sufficient as against a general demurrer interposed on the ground that no causal connection between the injury and the negligence had been shown, it being reasonably inferable from the allegations that the injury would not have occurred but for the negligence alleged.

Same—Notice of Defect in Appliance—Complaint—Sufficiency.

2.  In the absence of a demand for more specific information, the recital in the complaint that the elevator apparatus had been in substantially the same dangerous condition it was in at the time of the accident for more than ten years to defendant's knowledge and that all the facts and conditions with relation thereto were or should have been known to him, was not open to the objection raised by general demurrer that it failed to state within what time the defendant knew or should have' known of the dangerous condition.

Same—Complaint—Technical Defects—When Insufficient for Reversal of Judgment.

3.  Where defendant was not misled by any allegations or lack of allegations in the complaint but was fully prepared to defend the action upon the merits, the judgment in favor of plaintiff will not be reversed for mere technical defect in the pleading raised by general demurrer.

Same—Conflict in Evidence—Verdict Conclusive.

4.  Where the evidence on every material point in a personal injury action was in conflict, the verdict will not be disturbed on

---

1.  Private action for violation of statute as to guarding elevator shaft, see note in L. R. A. 1915E, 541.

Liability of master for injuries to servant due to insufficiently lighted shaft, see note in 20 Ann. Cas. 9.

appeal even if the appellate court upon an inspection of the record should be of opinion that the jury might well have found in favor of appellant.

Same—When Defendant's Negligence Proximate Cause of Injury.
5. Where the primary cause of a personal injury was pure accident occasioned without the fault of the injured party, and the accident would not have occurred but for the negligent act of defendant, his negligence is the proximate cause of the accident for which plaintiff may recover damages.

Same—Verdict Held not Excessive.
6. *Held,* that a verdict for $5,000 awarded to plaintiff, a man twenty-two years of age at the time of the accident, who for a period of about twenty-seven months prior thereto had been employed as a miner or laborer earning man's wages, whose right wrist, hand and fingers were permanently weakened, impairing his earning capacity, and who had been otherwise injured, had lost employment for a number of months, *etc.*, was not excessive.

*Appeal from District Court, Missoula County; James M. Self, Judge.*

ACTION by Arthur G. Davis against George Freisheimer. From a judgment for plaintiff, defendant appeals. Affirmed.

*Mr. John E. Patterson* and *Mr. Dan. J. Heyfron,* for Appellant, submitted a brief; *Mr. Patterson* argued the cause orally.

The complaint is insufficient. It alleges no facts showing a causal relation or connection between any negligent act of the defendant and the space through which plaintiff fell causing his injuries. (*Stones* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 342, 197 Pac. 252; *Stricklin* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 367, 197 Pac. 839; *Monson* v. *LaFrance Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.) There is no allegation showing any causal relation or connection between any negligent act of defendant and what caused the fall to plaintiff toward the elevator. (*Ecclesine* v. *Great Northern Ry. Co.,* 58 Mont. 470, 194 Pac. 143.) There is no allegation that defendant had knowledge, or that he should have known of any dangerous condition pointed out

---

6. Excessiveness of verdicts in actions for personal injuries other than death, see notes in Ann. Cas. 1915D, 488; Ann. Cas. 1916C, 916; L. R. A. 1915F, 30.

and alleged to exist at the time of plaintiff's fall. (*Hollingsworth* v. *Davis-Daly Estates Copper Co.,* 38 Mont. 143, 99 Pac. 142; *Fearon* v. *Mullins,* 35 Mont. 232, 236, 88 Pac. 794; *Boyle* v. *Chicago etc. Ry. Co.,* 60 Mont. 453, 458, 199 Pac. 283.)

The evidence of plaintiff does not show what caused the elevator to be in the position it was in at the time he fell. He only states that he left the elevator level with the floor at 11 o'clock A. M. and at 3:30 P. M. he fell in. He rests on a bare inference that on this occasion it crept, but he does not offer any evidence that creeping caused the space to exist, nor that anyone but himself was responsible for its position on this occasion. (*Makarites* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 493, 197 Pac. 743; *Heck* v. *Northern Pac. Ry. Co.,* 59 Mont. 106, 196 Pac. 521; *Reino* v. *Montana Mineral Land etc. Co.,* 38 Mont. 291, 295, 99 Pac. 853.

The rule is not that in order for the plaintiff to relieve himself from the implication of contributory negligence his proof must show that his act is negligent, but that where his act, negligent or not, is instrumental in bringing about the injury, the burden is shifted to him to show, in order to make out a case, his freedom from negligence. (*Cummings* v. *Helena & L. S. & R. Co.,* 26 Mont. 434, 451, 68 Pac. 852; *Gregory* v. *Chicago etc. Ry. Co.,* 42 Mont. 551, 562, 113 Pac. 1123; *Monson* v. *LaFrance Copper Co., supra.*) The servant assumes the ordinary risk of his employment, but such assumption of risk implies knowledge by the servant, or his having the means of knowledge, and his appreciation of the danger. (*Morelli* v. *Twohy Bros. Co.,* 54 Mont. 366, 375, 170 Pac. 757; *Hardesty* v. *Largey Lumber Co.,* 34 Mont. 151, 161, 86 Pac. 29; *Coulter* v. *Union Laundry Co.,* 34 Mont. 590, 604, 87 Pac. 973; *Schroder* v. *Montana Iron Works,* 38 Mont. 474, 100 Pac. 619; *Fotheringill* v. *Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86; *Cincinnati N. O. & T. Ry. Co.* v. *Thompson,* 236 Fed. 1, 149 C. C. A. 211.)

[68 Mont. 322.]

On the question of variance, see *Bracey* v. *Northwestern Improvement Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; *Gregory* v. *Chicago, M. & St. P. Ry. Co.*, 42 Mont. 551, 562, 113 Pac. 1123; *Forsell* v. *Pittsburgh & Mont. C. Co.*, 38 Mont. 403, 100 Pac. 218; *Flaherty* v. *Butte Electric Ry. Co.*, 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416.

*Mr. Harry H. Parsons* and *Mr. George G. Witter*, for Respondent, submitted a brief; *Mr. Witter* argued the cause orally.

Proximate cause: See *Birsch* v. *Citizens Electric Co.*, 36 Mont. 574, 93 Pac. 940; *Telegraph Cable Co.* v. *Zopfi*, 93 Tenn. 369, 24 S. W. 633; *Rosenbaum* v. *Shoffner*, 98 Tenn. 624, 40 S. W. 1086.

Contributory negligence: See *Cannon* v. *Lewis*, 18 Mont. 402, 45 Pac. 572; also cases above.

Assumption of risk: *Hollingsworth* v. *Davis-Daly etc. Copper Co.*, 38 Mont. 143, 99 Pac. 142; *Stevens* v. *Hines*, 63 Mont. 94, 206 Pac. 441; *Cameron* v. *Judith M. & C. Co.*, 61 Mont. 118, 201 Pac. 575.

Both plaintiff and defendant claim that plaintiff slipped and was injured. The plaintiff contends that he slipped while endeavoring to pick up a box by the elevator; the defendant contends that he slipped and fell while trying to climb on the elevator, while the floor thereof was above the floor of the store. The question of assumption of risk is usually a jury question. (*Hill* v. *Nelson Coal Co.*, 40 Mont. 1, 104 Pac. 876; *Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45; *Forquer* v. *Slater Brick Co.*, 37 Mont. 426, 97 Pac. 843; *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29; *Hollingsworth* v. *Davis-Daly etc. Co.*, 38 Mont. 143, 99 Pac. 142; *Sorenson* v. *Northern Pac. Ry. Co.*, 53 Mont. 268, 163 Pac. 560.) In a case of this kind, the law is as stated in *Birsch* v. *Citizens' Elec. Co.*, 36 Mont. 574, 93 Pac. 940; see, also, *City of Louisville* v. *Bridwell*, 150 Ky. 589, 150 S. W. 672; *Benedict Pineapple Co.* v. *Atlantic Coast etc. R. R. Co.*, 55 Fla. 514, 20 L. R. A.

(n. s.) 92, 46 South. 732; *Cook* v. *Ormsby*, 45 Ind. App. 352, 89 N. E. 525; *King* v. *Inland Steel Co.*, 177 Ind. 201, 96 N. E. 337, 97 N. E. 929.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff, an employee of the defendant, while in the course of his employment fell into an elevator shaft in defendant's store. Charging the accident to have been the result of defendant's negligence, plaintiff brought this suit. There was a verdict for plaintiff in the sum of $5,000, upon which judgment was entered. Motion for a new trial having been denied, defendant appealed. The transcript embraces 314 printed pages, while the "briefs" contain 226. There are forty-six specifications of error. Were we to discuss them all, this opinion might rival one of the briefs in length. But as we view the case an extended discussion will not be useful to anyone.

Asserting that the complaint does not state facts sufficient to constitute a cause of action, defendant first challenged it by demurrer which was overruled. Attack upon the same ground was renewed frequently during the trial and is made the basis of many alleged errors urged upon this appeal. The complaint charges in part that at all times mentioned the defendant was the owner of and operating [1] a drug store in a two-story brick building with basement in the city of Missoula; that in the northeast part of the storeroom on the ground floor there was at all times "an old, dangerous and out-of-date elevator owned and operated by the defendant, which ran from the basement below said ground floor to the said ground floor and second story of said building," the power therefore being supplied by the person operating it; that there was a doorway about four to five feet in width and about six feet in height opening into the elevator shaft; that there was no gate, screen, chain or other contrivance in the doorway whatsoever; that the corner

occupied by the elevator was dark and without any light sufficient for one to see whether the elevator cage was up, down or on the level with the ground floor; that there was no lock, device or contrivance whatsoever "by which the said cage could be made stable and fast, so that it would remain or stay even with the floor on which it was stopped, but that at said times when it was so stopped on such level it would gradually slide or creep upward about four or five feet above said floor and leave a dangerous opening between the bottom of the cage and the said ground floor"; that the elevator had been in substantially the same dangerous condition without improvement, repair or state inspection for more than ten years; and that all of these facts and conditions were known to the defendant, or by the exercise of reasonable care would have been known to him.

In a succeeding paragraph the foregoing conditions and others were charged specifically as negligence on the part of the defendant; for instance, it was charged that defendant negligently and carelessly failed and omitted to provide any light in or about the elevator or the shaft, but negligently kept the same and the surroundings dark; that he negligently failed and omitted to provide any appliance in or about the opening of the door leading to the shaft so as to prevent one from falling therein or to give one warning thereof; that he negligently and carelessly failed and omitted to provide any lock or other appliance on the elevator "so as to prevent the same from gradually slipping and creeping up above the floor when and where stopped, so as to prevent persons from falling in said shaft while and when the bottom of the cage would so get above the floor where stopped."

It was then alleged that as a direct and proximate result of these acts of negligence the plaintiff, while in the exercise of due care, and while acting within the scope of his authority and in the line of his employment, and while working on the ground floor in the northeast corner thereof, fell into "said dark and unguarded opening down into said ele-

vator shaft," a distance of about sixteen feet, the injuries complained of resulting.

The defendant insists that the complaint is fatally defective for the reason that it does not show any causal connection between any alleged act of defendant and the injuries sustained by plaintiff. In other words, the precise attack the defendant makes in this respect is that it is not alleged specifically that the aperture between the ground floor and the bottom of the elevator at the time the accident occurred was caused by any particular negligence of defendant.

The complaint was sufficient against a general demurrer. It appears from its allegations that the defendant was negligent, that plaintiff was injured, and that the negligence charged was a proximate cause of the injury. No other reasonable inference can be drawn from the allegations of the complaint but that the injury suffered would not have happened but for the negligence alleged, and hence the causal connection between the two appears. In other words, it is reasonably clear from the allegations that if the cause had not existed the injury would not have occurred. (*Stones* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 342, 197 Pac. 252, and cases cited.) The pleading here comes within the rule laid down in *Stricklin* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 367, 197 Pac. 839, wherein the court said: "It is the rule of pleading announced by our Code that the facts constituting plaintiff's cause of action must be set forth 'in ordinary and concise language.' (Rev. Codes, sec. 6532.) The rule requires the facts to be stated by direct averment so that the party who is to answer may understand the specific acts of remissness with which he is charged and that material issues may be framed for trial." If the defendant had complained that he was unable to properly prepare his defense because not apprised of the precise details of the act or acts of negligence upon which plaintiff intended to rely at the trial, he might have moved to have the complaint made more spe-

cific, or have called for a bill of particulars, neither of which he did.

Pointing out what they claim to be a fatal defect in the complaint, defendant's counsel say that it does not even allege that at the time plaintiff fell into the basement—an accident undisputed and properly alleged—an opening existed between the building floor and the elevator floor. This objection is hypercritical. An obvious answer to it is that if there had been no hole there plaintiff would not and could not have fallen into the basement.

They also object that "the complaint is fatally defective [2] in failing to state within what time the defendant knew of any defects and dangerous condition to exist, or within what time defendant should have known." This objection also is without merit in view of the recitals of negligence followed by the allegation that the elevator contrivance and apparatus had been in substantially the same dangerous condition without improvement, repair or state inspection for more than ten years, and "that all the facts and conditions herein stated were known to defendant, or by the exercise of reasonable care would have been known to him." Thus the complaint is brought within the doctrine announced in *Hollingsworth* v. *Davis-Daly Estates Copper Co.,* 38 Mont. 143, 99 Pac. 142. In this particular the complaint was not vulnerable to a general demurrer; if the defendant required more specific information he should have made proper demand for it.

The defendant's answer, after admitting some of the allegations of the complaint, consists otherwise of a general denial, followed by two affirmative defenses. In the first of these defendant pleads that plaintiff assumed the risks of his employment, alleging that at the time of the accident plaintiff went to the elevator for the purpose of entering and operating it and observed, knew and appreciated the position of the elevator and the danger incident to entering the same in its then position, the floor of the elevator being above the floor

of the store, or in the exercise of ordinary care he might and should have known and appreciated the same; that as plaintiff attempted to enter the elevator he accidentally lost his position and fell beneath the same, causing him some injury. In the second defense the defendant pleads that the plaintiff was guilty of contributory negligence. In this defense the defendant avers that at the time of the accident the plaintiff went to the elevator for the purpose of entering and operating the same, and observed that the elevator was raised so that the floor thereof was above the main floor of the store; that upon observing the position of the elevator plaintiff negligently endeavored to enter the elevator from the floor and in attempting so to do lost his position and fell between the floor of the elevator and the main floor to and into the basement under the elevator. Further allegations are to the effect that there was a safe way in which the plaintiff might have proceeded, but instead of adopting the safe way the plaintiff negligently failed and omitted to use the same and deliberately chose the more dangerous course; "that if there was any negligence which caused the elevator to be in the position it was in at the time the plaintiff attempted to enter the same it was due and caused by the plaintiff himself; that plaintiff caused said elevator to be in said position at said time; that if there was any negligence that by reason thereof and of the premises, said injuries to the plaintiff were proximately due to and caused by his contributing fault and negligence." The affirmative defenses were denied by plaintiff.

It is plain that the defendant was not misled by any [3] allegations or lack of allegations made by the plaintiff in his complaint. The defendant was fully prepared to defend the case against the allegations of the complaint and in every respect against the evidence put forth by plaintiff. In confirmation of the foregoing it is interesting to note that as a matter of fact the defendant was at the store at the time of the accident and himself examined the conditions obtaining at the elevator

contemporaneously with the happening of the accident. This is a good illustration of the common-sense rule that, unless there is a want of substance in a complaint upon the particular issue involved and a failure of proof in consequence, a case should not be reversed at the instance of a defendant who has not been deprived of a substantial right, but who, on the contrary, has been enabled to and has defended the action upon the merits of the cause irrespective of the technical condition of the pleadings. The idea that a disappointed litigant who has had a fair and impartial trial upon the merits of the cause may obtain a new trial because of the absence of a nonessential allegation, or for some mere defect in a pleading, is archaic, and has been relegated to the past in this jurisdiction. (See secs. 9164, 9191, Rev. Codes 1921; *Rogness* v. *Northern Pac. Ry. Co.*, 59 Mont. 373, 196 Pac. 989; *Grant* v. *Nihill*, 64 Mont. 420, 210 Pac. 214.)

Briefly, the contentions of the respective parties as to how the accident occurred may be summed up as follows: The plaintiff testified that as far as he knew he was the last one who used the elevator, and he applied the lock. The floor of the elevator was then level with the first floor of the building. The occasion of its use then was that he and Miss Saderstrom, a clerk in the defendant's employ, had brought from the basement some boxes of goods which they were packing to send away. When the elevator stopped one of the boxes rolled off the elevator to the floor a short distance from the elevator shaft. Then the plaintiff attended to some other errands, including several trips to the postoffice. About half-past 3 in the afternoon Miss Saderstrom and himself were packing a box for export when it became necessary to obtain the box which had rolled off the elevator. In stooping for this box, the dim outline of which he could see, visibility in the room being difficult, he either stumbled or slipped, plunging forward into the elevator shaft, the elevator having moved up or having been moved up a considerable distance above the floor. On his part, defendant admits that at the time of the

accident the elevator was thirty or forty inches above the floor. He contends that the plaintiff left it there. He says he did not leave it there, and Miss Saderstrom says she did not. Nobody had used the elevator except plaintiff, defendant and Miss Saderstrom. There was nobody else to use it. Defendant's theory is that plaintiff "put his hands on the top of the elevator and was going to jump on top of the elevator and his feet slipped underneath and thus he went down the elevator shaft." It is contended by counsel for plaintiff that if this had been the manner of the occurrence plaintiff necessarily would have fallen upon his back and they say the physical facts show that this was not the manner of the occurrence because all of plaintiff's wounds were upon the front part of his body. The front part of his head was bruised, his collar-bone was broken, his left arm was broken at the wrist, and his body in front was otherwise bruised. Plaintiff says it was dark about the elevator shaft so that he could not see the aperture made by the elevator being above the floor. Defendant says it was light and what plaintiff did was negligence on his part, also, as has been adverted to, that plaintiff assumed the risk. All of these [4] questions of fact properly were submitted to the jury and by them resolved in favor of plaintiff. Upon every essential point the evidence is in conflict. Whether the jury should have found the other way is not material here, even if we should think they might well have done so. (*Stillinger* v. *Kelly,* 66 Mont. 441, 214 Pac. 66.)

But defendant argues that the evidence on plaintiff's part is insufficient to sustain the verdict. The point is not well [5] taken. Considering it most favorably to defendant, it must be said that there is a fair inference from the evidence that the negligence of the defendant was the proximate cause of plaintiff's injuries. "At least we are satisfied that it was a matter properly submitted to the jury for its determination." (*Birsch* v. *Citizens' El. Co.,* 36 Mont. 574, 93 Pac. 940.) Other language of the *Birsch Case* is appli-

cable to this: "We think it may be said to be the general rule, sustained by the great weight of authority, that 'where the primary cause of an injury is a pure accident, occasioned without fault of the injured party, if the negligent act of the defendant is a co-operating or culminating cause of the injury, or if the accident would not have resulted in the injury excepting for the negligent act, the negligence is the proximate cause of the injury, for which damages may be recovered.' (*Goe* v. *Northern Pac. Ry. Co.*, 30 Wash. 654, 71 Pac. 182.) This doctrine has been directly recognized and applied in this state. (*Lundeen* v. *Livingston E. L. Co.*, 17 Mont. 32, 41 Pac. 995; *Cannon* v. *Lewis*, 18 Mont. 462, 45 Pac. 572.) In *Meisner* v. *City of Dillon*, 29 Mont. 116, 74 Pac. 130, the same rule is stated as follows: 'Where two causes contribute to an injury, one of which is directly traceable to the defendant's negligence, and for the other of which neither party is responsible, the defendant will be held liable, provided the injury would not have been sustained but for such negligence.' "

The question as to whether plaintiff was guilty of contributory negligence was submitted to the jury and properly so. The same may be said as to the defense of assumption of risk. The court seems to have been duly mindful of the rules on this subject as laid down by this court in *Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45, *Hollingsworth* v. *Davis-Daly Estate C. Co.*, *supra*, *Cameron* v. *Judith M. & C. Co.*, 61 Mont. 118, 201 Pac. 575, and *Grant* v. *Nihill*, *supra*.

Defendant complains of the action of the court in giving certain instructions and in refusing to give others to the jury. There are twenty-two assignments of error on this score. Twenty-eight instructions were given to the jury by the court. In none of these was error committed against the defendant. On the contrary, if any criticism were warranted it would be because some of the instructions lean too strongly in defendant's favor. As to the instructions offered by defendant which the court refused to give, we find that each is either covered

by those given, or inapplicable under the evidence, or would
have been erroneous if given.

It is contended that the verdict is excessive. Plaintiff was
[6] twenty-two years old at the time of the accident. Prior
to that, so he testified, he had worked for the Northern Pacific
at one of its roundhouses for about sixteen months. In that
employment he shoveled coal and cinders and wiped engines.
He had worked in the mines at Philipsburg for over eleven
months. He said: "My work there in the mines was pretty
heavy work; they had ten different tunnels and one shaft; I
had to go through all of those with the steel—carried the steel
on my back to the blacksmith-shop; I worked at that for three
months, and when the tunnels there got so far from there that
I couldn't make the rounds they changed me, and put me to
mucking, and they put two men on the same job that I had;
and I was mucking inside for about three months; and then
I started to run the car, and then the last month I sorted ore."
He went to Seattle where he worked in the shipyards for two
months. All the while he drew a man's wages.

When he fell down the elevator shaft he lost consciousness;
when he revived the morning after the accident he was at
home in bed. He testified that his head was bruised and cut,
collar-bone broken, right arm at the wrist fractured, right leg
and ankle injured, and his body otherwise bruised. He was
confined to his bed for three weeks. He said: "My neck was
stiff and over to one side, and I couldn't move my head without
it hurting me—and I didn't notice the pain so much in my
arm as I did in my leg at first—the leg and neck bothered me
most for a while, and then a couple of days after that it
started to bother me, my arm started to bother me worse then,
and they got medicine to put on it and from the time they
put that medicine on I started to hollering about 6 o'clock at
night, when they started putting it on, and I hollered all night
long, with that medicine in there   *   *   *   and they put some-
thing on it to take the pain out, and they gave me morphine—
that was about the third night that they gave me morphine,

and they gave me morphine, then, for three or four days, to make me sleep, because I was hollering all night, most of the time, and my folks couldn't sleep, and when I got so that I kept begging for morphine all the time, why he wouldn't give it to me, and said I couldn't have no more. * * * When I first woke up my arm was all bandaged up, and it was swollen so that they couldn't do nothing with it for about three days, and he comes down, and they took me up to the office in the car, took an X-ray picture of the arm, and he told me that they would have to break the wrist over, and he said he would be down and bring another doctor with him when he come, and I said all right, and they came down and put me to sleep and they broke it over, and then I had to go back three or four different times to the office again and have X-ray pictures taken of it after they broke it over, and the pictures showed the bones was crossed and had the cords of my fingers pinched in there so that I couldn't wiggle my fingers, and so they broke it over again, and the last time they broke it over it caused the flesh on the back of my hand to dry, and it dropped off the bone, and then they had to operate on it in order to limber my fingers so I could move my fingers.' * * * I suffered pain all the time during this period; I was in pain all the time; 'I was in pain and I couldn't put my foot on the ground or anything for about a month before I could put any weight on my foot at all, on my right leg. * * * As to my ability to get around and things of that kind, well, I had my wrist strapped fast to me, and my left shoulder I couldn't use, or arm or anything to help me around, and whenever I would go up town and slide my foot along I used to have to take my sister along to help me from falling over. I also suffered from cramps during all of this period.''

There was testimony tending to show that as a result of the accident plaintiff's right wrist and consequently right hand and fingers are seriously and permanently weakened; that his right leg is atrophied, there is a contraction of the muscles and ligaments at the ankle joint, and inability to flex the foot in a

normal way; that the sciatic nerve is affected. The testimony tended to show that by reason of the injuries to his wrist and hand plaintiff's earning capacity is permanently impaired. Plaintiff lost employment for a number of months. Necessary disbursements because of the injuries to the extent of $451 were shown. Much of this testimony was combated by defendant, but this too the jury passed upon. From the record we cannot say the verdict is excessive. On this point nothing need be added to what this court has said in *Nilson* v. *City of Kalispell*, 47 Mont. 416, 132 Pac. 1133, and *Hollenback* v. *Stone & Webster Engineering Corp.*, 46 Mont. 559, 129 Pac. 1058.

Other assignments of error we deem without merit.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.

