BROWN, RESPONDENT, *v.* COLUMBIA AMUSEMENT CO., APPELLANT.

(No. 6,854.)

(Submitted December 3, 1931. Decided December 31, 1931.)

[6 Pac. (2d) 874.]

*Messrs. Kremer, Sanders & Kremer,* for Appellant, submitted a brief; *Mr. Louis P. Sanders* argued the cause orally.

*Mr. Harry Meyer*, for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Columbia Amusement Company, a corporation, has appealed from a judgment rendered in favor of the plaintiff, Marie Brown, in a personal injury action.

The defendant operates several amusement devices at the Columbia Gardens, near Butte, among them a "merry-go-round," which consists of a central platform on which are mounted a melodeon and motor; a moving platform 7 feet wide furnished with hobby-horses and other seats for passengers and surrounded by a stationary platform 8 or 9 feet wide. The moving platform is 41 feet in diameter, giving it a circumference of less than 130 feet; at "top speed" it makes 6.75 revolutions per minute, and, consequently, has a maximum speed of approximately 10 miles per hour; it is raised but 4 inches above the outside stationary platform.

On June 15, 1930, Marie Brown, a school-teacher, took her daughter "Jean," three years and three months old, and a playmate a year older, to the Gardens, where the children had four rides on the merry-go-round. On each of these occasions two men were in charge of the device, one operating the machinery from the central platform and the other taking tickets and riding the moving platform, looking after the patrons. About 7 P. M. the party returned to the vicinity of the merry-go-round and, observing that she still had two children's tickets for it, plaintiff suggested that the children

could have one more ride. She placed the children on rigid hobby-horses, told Jean to "hold on tight," and stepped to the outside platform. Plaintiff testified that she then gave the tickets to the ticket taker and pointed the children out to him. In this she is contradicted by the man in charge at that time, who was not one of the men in charge on the former occasions but had gone on shift at 6 P. M. His statement is that he never collected tickets until after the ride had started and made no collection on this occasion; that he saw plaintiff place the children on the horses and thought she was going to ride with them.

The hobby-horses were fitted with stirrups, but not with straps or rails for the protection of children. Plaintiff testified that she did not say anything to Jean as to getting off the horse, as she "did not want to put any such notion in her head," and that she remained on the outside platform and smiled and waved to Jean each time she passed "to reassure her that I was there by her."

After several revolutions plaintiff observed that Jean was off the horse, hanging to its tail, and crying; she looked for the man who always theretofore rode the platform, but he was not in sight; no one came to the rescue of the child while the platform made three more revolutions. The child was then at the outer edge in imminent danger of being thrown off, when plaintiff attempted to mount by seizing an upright thereon and jumping for the platform. Plaintiff was struck in the back by the forefeet of a hobby-horse, fell to the outside platform, but clung to the upright and was dragged halfway around the circle, when the merry-go-round stopped as a result of the action of the operator, who saw the child on the platform about the time the plaintiff saw her and threw out the clutch, which action causes the platform to come to a stop after it has made four or five revolutions.

About the time of the mother's accident the man in charge "made a dive" for the child, but she rolled to the outside platform and, as the speed was greatly decreased at the time, was unhurt.

The plaintiff suffered a fracture of the transverse process of the third lumbar vertebra and many minor, but painful, injuries.

Plaintiff estimated the velocity of the device, at the time of her injury, at ten miles per hour; the testimony on the part of defendant would indicate that it was not more than half that. The defendant did not attempt to refute the testimony that, prior to the occasion on which plaintiff was injured, it had always furnished a man to look after the children riding, in addition to the man who operated the machinery.

Defendant has made twenty-five specifications of error, under which counsel argue that the complaint does not state facts sufficient to constitute a cause of action, that the evidence is insufficient to warrant the verdict and judgment, and that the verdict is excessive.

1. As to the alleged insufficiency of the complaint, raised by general demurrer and on motion for nonsuit, defendant asserts that the complaint does not state ultimate facts either showing an emergency or to relieve plaintiff from the charge "that her attempt was the height of folly and contributory negligence of the grossest character."

The complaint alleges, in effect, that, having received a child of tender years as a passenger, it became the duty of the defendant to provide someone to watch over and protect it; to have an attendant in charge to watch the children and see that they did not get off the horses and into a place of danger; and that, from past experience, plaintiff believed that the defendant would have an attendant on the platform on this occasion, and because of the negligent failure of the defendant to perform this duty "an emergency" was created. It is alleged that, in this emergency, the child being in danger of falling off, for the purpose of preventing such accident, and using all due care and caution for her own safety, plaintiff attempted to board the merry-go-round, but, because of the speed thereof and the fact that she was compelled to act hastily, she was struck, knocked down, and injured.

These allegations were aided and the complaint deemed amended by testimony introduced without objection, to the effect that the speed of the merry-go-round was approximately 10 miles per hour; that plaintiff scanned the platform for the attendant but he was not there, and that she therefore realized that it was "up to" her to do something, as it seemed that the child would be "dashed off the merry-go-round"; that she "figured" she could get on the platform and it was the only thing to do to save her child from being killed; and that she ran two or three steps before attempting to step up on to the platform. (*Dahlberg* v. *Lannen,* 84 Mont. 68, 274 Pac. 151; *Davis* v. *Claxton,* 82 Mont. 574, 268 Pac. 787; *Parsons* v. *Rice,* 81 Mont. 509, 264 Pac. 396.)

A complaint must be liberally construed with a view to substantial justice between the parties, and the court must disregard any error or defect which does not affect the substantial rights of the parties. (Secs. 9164, 9191, Rev. Codes 1921; *Boyd* v. *Great Northern Ry. Co.,* 84 Mont. 84, 274 Pac. 293; *Davis* v. *Freisheimer,* 68 Mont. 322, 219 Pac. 236.)

Actionable negligence arises only from the breach of a legal duty (*Jonosky* v. *Northern Pac. Ry. Co.,* 57 Mont. 63, 187 Pac. 1014; *McIntyre* v. *Northern Pac. Ry. Co.,* 56 Mont. 43, 180 Pac. 971), and, to state a cause of action, it is necessary that the complaint disclose, by a statement of facts—not legal conclusions—the duty, the breach thereof, resulting damages, and that the breach of the duty was a proximate cause of the injury. (*Fusselman* v. *Yellowstone L. & I. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Bennetts* v. *Silver Bow Amusement Co.,* 65 Mont. 340, 211 Pac. 336.)

The complaint, as amended by implication at least, meets the above requirements and is sufficient, if it correctly states the legal duty imposed upon defendant, and does not, in itself, disclose contributory negligence on the part of plaintiff. (*Birsch* v. *Citizens' Elec. Co.,* 36 Mont. 574, 93 Pac. 940; *Freisheimer* v. *Missoula Creamery Co.,* 64 Mont. 443, 210 Pac. 329.)

What, then, was the duty which defendant owed under the circumstances related in the complaint? Plaintiff now contends that it was the same as that required of carriers of passengers for hire, which is "the utmost care and diligence for their safe carriage," the carrier being required to "provide everything necessary for that purpose." (Sec. 7815, Rev. Codes 1921.) However, the law of the case was fixed here by the court's instructions to the effect that "the defendant was not an insurer" and was chargeable only with the exercise of "ordinary care, that is, such care as ought to be expected of a reasonably prudent person under the * * * circumstances," which is the only degree of care recognized "in law."

What is "ordinary care" cannot be governed by arbitrary rules, but varies according to the exigencies which require attention and vigilance. (*Johnson* v. *Boston & Montana etc. Co.*, 16 Mont. 164, 49 Pac. 298.) It must be proportionate to the danger; what would be ordinary care in a case presenting little danger, would be far "below this in case of great danger." (*Liston* v. *Reynolds*, 69 Mont. 480, 223 Pac. 507, 509.)

One operating amusement devices for hire owes a duty to his patrons measured by the standard of ordinary care proportionate to the risk to be apprehended and guarded against, and, of course, if such an operator invites children who have not reached an age where they are able to understand, appreciate, and avoid danger incident to a device to which they are thus invited, ordinary care should include the taking of precautions to protect them, which would not be necessary in the case of adults or older children. (*Swan* v. *Riverside Bathing Beach Co.*, (1931) 132 Kan. 61, 294 Pac. 902; *Linthicum* v. *Truitt*, 2 Boyce (Del.), 338, 80 Atl. 245; *Longacre* v. *Yonkers R. Co.*, 236 N. Y. 119, 28 A. L. R. 1030, 140 N. E. 215; *Henroid* v. *Gregson Hot Springs Co.*, 52 Mont. 447, 158 Pac. 824; *Phillips* v. *Butte Jockey Club*, 46 Mont. 338, 42 L. R. A. (n. s.) 1076, 127 Pac 1011.)

These rules measure the *duty* of the defendant, the question as to what steps or precautions should be taken in the

performance of that duty being one of negligence rather than duty.

In the absence of a law requiring specific acts, the court cannot say, as a matter of law, that the duty imposed includes such specific acts (*Stewart* v. *Mynatt*, 135 Ga. 637, 70 S. E. 325; *Pontecorvo* v. *Clark*, 95 Cal. App. 162, 272 Pac. 591), but that question must be left to the jury in determining whether there has been a breach of the duty imposed. (24 Cal. Jur. 565; *Johnstone* v. *Panama Pacific Exposition Co.*, 187 Cal. 323, 202 Pac. 34; *Harris* v. *Crawley*, 170 Mich. 381, 136 N. W. 356; *Hayes* v. *Eldora Amusement Co.*, 51 Pa. Super. Ct. 426; *Sciachitano* v. *City of Beaumont*, (Tex. Civ. App.) 266 S. W. 558.)

The complaint sufficiently charges the duty which was imposed upon the defendant; but did the defendant breach that duty?

Actionable negligence, the converse of reasonable vigilance, is the failure to do what a reasonably prudent person would ordinarily do under the circumstances, or the doing of what such a person would not have done under the circumstances. (*Zanos* v. *Great Northern Ry. Co.*, 60 Mont. 17, 198 Pac. 138; *Flaherty* v. *Butte Elec. Ry. Co.*, 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416.)

The reasonable inference from the evidence is that the operator of the merry-go-round, in this case considered, accepted as patrons any and all persons who had the price of a ride— a nickel—and made no exception as to children of an age rendering them incapable of apprehending danger or caring for themselves. It did not require parents to accompany such children but, impliedly at least, represented to such parents that an attendant would ride the moving platform and look after such children. With this inference drawn from the testimony, the jury was called upon to determine what steps the operator should have taken, in the exercise of ordinary care under the circumstances and the known danger encountered, to render the amusement reasonably safe from such danger.

190,

The test of actionable negligence is not what might have prevented a particular accident, but what reasonably prudent men would have done in the discharge of their duties under the circumstances as they existed at the time of the accident. If the operation of an amusement device is such that those who patronize it may reasonably be expected to receive injury unless they pursue a certain line of conduct with reference to it, it is the duty of the operator to formulate and enforce rules for the conduct of such persons. (*Davenport* v. *Oceanic Amusement Co.*, 132 App. Div. 368, 116 N. Y. Supp. 609.)

Fundamentally, the operation of a merry-go-round does not differ in this regard from the conduct of a bathing beach; in each the operator should reasonably apprehend danger to patrons not fully competent to handle themselves in the environment, if such persons are permitted to become patrons. It is held that one who maintains a public bathing resort, to which the public is invited to bathe for an admission charge, is bound, in the exercise of ordinary care, to keep someone on duty to supervise the bathers and to immediately rescue any one of them in apparent danger. (*Larkin* v. *Saltair Beach Co.*, 30 Utah, 86, 116 Am. St. Rep. 818, 8 Ann. Cas. 977, 3 L. R. A. (n. s.) 982, 83 Pac. 686.)

Manifestly, a platform moving in a circle, and thus developing centrifugal force, must be known to any reasonably prudent man to be a dangerous place for very young and immature children, and if the operator of such a device, for the sake of the nickels he may collect, does not prohibit such children from riding thereon, ordinary care should dictate that he take such steps as are necessary for their protection, such as promulgating and enforcing rules compelling a parent or other responsible person to ride with them and care for them; provide straps for fastening them on, or provide an attendant to ride the moving platform who will be vigilant to discover any child not maintaining its equilibrium and "to immediately rescue any apparently in danger." (*Larkin Case*, above.)

The evidence is sufficient to warrant the finding, implied from the verdict, that the defendant breached its duty

toward the child by negligently withdrawing the attendant who had theretofore ridden on the moving platform for the protection of the children. However, the child was not injured; the mother was, in an attempt to rescue the child from a position of apparent danger. That the danger was apparent and appeared imminent is shown by the testimony of the man operating the machinery, to the effect that as soon as he saw the child in a position of danger he threw out the clutch to stop the platform from revolving and made a "dive" for the child.

The defendant concedes the humanitarian rule that a person injured in the rescue, or attempted rescue, of another who has been placed in a situation of peril by the negligence of a third person, may recover from the negligent person as though the negligence constituted a breach of duty toward him. In such a case "the presumption that the rescuer is impelled by the dictates of humanity is of itself sufficient to send the case to the jury, unless it is apparent that when he encountered the danger he ought as a prudent man to have known that he could not escape injury or death." (*Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; *Da Rin* v. *Casualty Co.*, 41 Mont. 175, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164, 108 Pac. 649.)

It is first contended that plaintiff's act in attempting to board the platform was uncalled for and reckless. It is true plaintiff did not call for help, but she looked for the man in charge while the platform made three revolutions, the child meanwhile being slowly forced to the outer edge by centrifugal force; no help from the operator appearing, she was justified in acting as in an emergency; nor does the picture of a healthy and athletically inclined young woman, running a few steps and then seizing an upright rod to swing herself on to a platform raised but four inches above that on which she was running and traveling from five to ten miles an hour, spell recklessness.

The question of contributory negligence in placing the child on the merry-go-round alone, presents a closer question.

If the emergency is the culmination of a train of events set in motion by the negligent act of the party attempting the rescue, there can be no recovery. (*Miller* v. *Union R. Co.*, 191 N. Y. 77, 83 N. E. 583; *Alabama Power Co.* v. *Conine*, 213 Ala. 228, 104 South. 535; *Pennsylvania Co.* v. *Langendorf*, 48 Ohio St. 316, 29 Am. St. Rep. 553, 13 L. R. A. 190, 28 N. E. 172.)

Parents of children so young as to be unable to care for themselves owe a duty to exercise reasonable care and prudence for their safety, and what is reasonable care under the circumstances depends upon the age and intelligence of the child and the danger of the situation known, or which should have been known, by the exercise of the required care. The unexplained presence of a child *non sui juris* in a known place of danger is prima facie, but not conclusive, evidence of contributory negligence on the part of the parents. (*Harrington* v. *Butte, A. & P. Ry. Co.*, 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Conway* v. *Monidah Trust*, 52 Mont. 244, 157 Pac. 178.)

Plaintiff was familiar with the operation of the merry-go-round; she knew that, under certain circumstances, its operation was dangerous to the child, but she did not think it was in any danger if the operations were carried on as theretofore: with a man riding the platform to assist the child in case it attempted to dismount or lost its equilibrium; she relied upon such a man being in charge.

From the foregoing description of the merry-go-round, it would seem that it was specially constructed for the carriage of young children and was made as safe as such a device for amusement could be made. Plaintiff had, from past experience, reasonable cause to believe that an attendant, in addition to the operator of the machinery, would be on the platform, "reasonable cause" being "such grounds of belief as would warrant a cautious man in the conclusion that it is true." (*Brown* v. *Yielding*, 206 Ala. 504, 90 South. 499, 501.) Under her testimony, believed by the jury, she pointed the children out to the ticket man, after she left the plat-

form, and gave him tickets for them, but not for herself, so that the attendant knew that she was entrusting them to the care of the management. Having been in a position to forbid her to leave her child alone on the hobby-horse and having failed to do so, the defendant must be deemed to have bidden her to leave the child in the care of the attendant (sec. 8748, Rev. Codes 1921), thus raising an implied promise to look after the child.

Under all the circumstances, we cannot say that the evidence did not warrant the jury in finding that plaintiff was not guilty of contributory negligence in this respect.

Finally it is contended that the verdict of $3,000 is excessive. A new trial may be granted for "excessive damages, appearing to have been given under the influence of passion or prejudice" (sec. 9397, Rev. Codes 1921), and, in order to avoid a new trial, courts sometimes give the prevailing party the option of remitting the excess (*Chicago Title & Trust Co.* v. *O'Marr*, 25 Mont. 242, 64 Pac. 506), but the difficulty in determining whether or not damages in personal injury cases are excessive, arises from the fact that there is no rule by which the question can be determined and the citation of authorities is of little assistance. No two cases are alike; verdicts as large or larger have been sustained where the injury was no greater than was here shown, and judgments as small or smaller have been reduced or scaled. The rule in this jurisdiction is declared to be that "so long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid, unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive." (*White* v. *Chicago etc. Ry. Co.*, 49 Mont. 419, 143 Pac. 561, 564; *Kirk* v. *Montana Transfer Co.*, 56 Mont. 292, 184 Pac. 987; *Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 291 Pac. 1042.)

The plaintiff suffered severe pain from the time of the injuries up to and including the time of the trial; she was confined to her bed for four weeks and thereafter walked

on crutches for three or four weeks; she has not since been able to swim, dance, drive a car, or do many of the other things she did before; she has intermittent "knife-like pains" through her back and left leg; she is not able to teach summer school, as she did formerly. A physician who examined her about two weeks prior to the trial testified that she suffered from sciatica of the left side and bursitis of both knees. Sciatica is a nervous condition; bursitis is not; it is an inflamed condition of the surfaces under the kneecap, causes creaking of the joints and is apt to be permanent. The doctor could not say that the sciatica resulted from the accident, and the testimony regarding it was withdrawn from the jury.

On this evidence an award of $3,000 does not so shock the conscience and understanding as to require a new trial or an arbitrary substitution of the judgment of this court for that of the jury.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied January 19, 1932.